IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIS INTERNET SERVICES,<br><br>    Plaintiff,<br><br>  v.<br><br>OPTIN GLOBAL, INC., et al.,<br><br>    Defendants.<br>_____/ | No. C 05-5124 CW<br><br>ORDER GRANTING DEFENDANT AEGIS' MOTION TO DISMISS AND DENYING DEFENDANT QUICKEN'S MOTION FOR SECURITY |

Defendant Aegis Lending Corporation (Aegis) moves pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) to dismiss Plaintiff Asis Internet Services' complaint against it. Defendants Michael Cuervo, John Terrence Dorland, Stateside Mortgage, Inc., Bruce Lerner, Quicken Loans, Inc., Chris Valley, National Fidelity Funding, Michael Garcia and American Home Equity Corporation join

in Aegis' motion to dismiss.[1] Quicken separately moves pursuant to the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (CAN-SPAM Act), 15 U.S.C. § 7706(g)(4), Local Rule 65.1-1 and the Court's inherent power for an order requiring Plaintiff to post security for the costs and attorneys' fees Quicken expects to incur in this action. Plaintiff opposes the motions. The motions were heard on April 21, 2006.

Having considered all of the papers filed by the parties and oral argument on the motions, the Court grants Aegis' motion to dismiss, grants Plaintiff leave to file an amended complaint, and denies Quicken's motion for posting of security.

## BACKGROUND

The facts below are taken from Plaintiff's complaint and are assumed to be true for the purposes of this motion only.

Plaintiff is a California corporation that provides internet access services. The Spammer Defendants directed, controlled and participated in "spamming," causing more than 10,000 deceptive and unsolicited commercial electronic messages to be sent to Plaintiff's computer server between October 25, 2005 and November 14, 2005. The header information for these emails was falsified, misrepresented or forged in a way that would mislead a reasonable recipient as to the contents and subject matter of the message.

Defendants Mr. Dorland, Mr. Cuervo, Mr. Valley, National Fidelity Funding, Mr. Lerner, Stateside, Mr. Garcia, American Home

---

[1] Optin Global, Inc., Vision Media Ltd., Corp., Rick Yang and Peonie Pui Tang Chen (collectively, the Spammer Defendants) do not join in Aegis' motion to dismiss.

2

Equity, Quicken, Emerald Home Loan, Inc., Francis Prasad and Aegis (collectively, the Mortgage Defendants) are mortgage brokers doing business in the United States. The Mortgage Defendants allegedly "conspired with and at all times supported," and benefitted from, the Spammer Defendants' actions. Complaint ¶ 10, 12. Plaintiff alleges that the Mortgage Defendants knew that the Spammer Defendants' actions were injuring Plaintiff.

Plaintiff brings claims against all Defendants under the CAN-SPAM Act, 15 U.S.C. § 7701 et seq. and California's Business and Professions Code § 17529 et seq., both of which restrict the use of unsolicited commercial email. Plaintiff also brings a State law claim for civil conspiracy against all Defendants.

## LEGAL STANDARD

I. Rule 12(b)(6)

A motion to dismiss for failure to state a claim will be denied unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Falkowski v. Imation Corp., 309 F.3d 1123, 1132 (9th Cir. 2002), citing Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th

3

Cir. 1987).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." Fed. R. Civ. P. 8(e). These rules "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).

When granting a motion to dismiss, a court is generally required to grant a plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, a court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. Id. at 296-97.

II. Rule 9(b)

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The allegations must be "specific enough to

4

give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). Statements of the time, place and nature of the alleged fraudulent activities are sufficient, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987), provided the plaintiff sets forth "what is false or misleading about a statement, and why it is false." In re GlenFed, Inc., Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994). Scienter may be averred generally, simply by saying that it existed. See id. at 1547; see Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally"). As to matters peculiarly within the opposing party's knowledge, pleadings based on information and belief may satisfy Rule 9(b) if they also state the facts on which the belief is founded. Wool, 818 F.2d at 1439.

## DISCUSSION

I. Extrinsic Evidence

Plaintiff states that Aegis has referred to "facts regarding the knowledge of Defendants, based on industry information not contained in the Complaint," Pl.'s Opp. at 1, and thus its motion should be "treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b). Plaintiff then offers its own extrinsic evidence to support its allegations. However, Plaintiff fails to identify the facts supposedly introduced by Aegis in its motion to dismiss, and Aegis disclaims any reliance on facts outside the four corners of the Complaint.

5

1  The Court finds that summary adjudication of issues would be
2  premature.  Accordingly, in deciding Aegis' motion to dismiss, the
3  Court does not consider the extrinsic material provided by
4  Plaintiff and disregards the portions of Plaintiff's brief that
5  depend upon this material.  See <u>Schneider v. Cal. Dept. of Corr.</u>,
6  151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (noting that the district
7  court may not look beyond the complaint to the plaintiff's brief in
8  determining the propriety of a Rule 12(b)(6) motion to dismiss).

## II. Applicability of Rule 9(b) to Anti-SPAM Claims

10  Aegis argues that Plaintiff's federal and State anti-spam
11 claims sound in fraud, and that Plaintiff has failed to plead these
12 claims with the requisite particularity.

13  Whether Rule 9(b) applies to claims brought under the CAN-SPAM
14 Act or California Business & Professions Code § 17529.5 is a
15 question of first impression.  Generally, Rule 9(b)'s particularity
16 requirement applies to both federal and State law causes of action.
17 <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1103 (9th Cir. 2003).
18 Even where fraud is not a necessary element of a claim, Rule 9(b)
19 applies if the plaintiff alleges a "unified course of fraudulent
20 conduct" and relies entirely on that course of conduct as the basis
21 of a claim.  <u>Id.</u> at 1103-04.  If the plaintiff instead alleges some
22 fraudulent and some non-fraudulent conduct, then the heightened
23 pleading requirements apply "only to 'averments' of fraud
24 supporting a claim rather than to the claim as a whole."  <u>Id.</u> at
25 1104.  If particular averments of fraud are insufficiently plead
26 under Rule 9(b), then the district court should disregard those
27 averments.  <u>Id.</u> at 1105.

Although Plaintiff suggests that the Court look to wire fraud cases to determine whether to apply Rule 9(b), a more directly relevant statute was considered in <u>Gordon v. Impulse Marketing Group, Inc.</u>, 375 F. Supp. 2d 1040 (E.D. Wash. 2005), where the district court addressed the applicability of Rule 9(b) to claims under Washington State's Commercial Electronic Mail Act. The Washington statute, like the federal CAN-SPAM Act and California's own anti-spam law, prohibits the use of commercial email that misrepresents information in identifying the message's origin or that contains false or misleading information in the subject line. 375 F. Supp. at 1047-48. After comparing the elements of the Washington statute to the elements of fraud, the court concluded that the Washington anti-spam law did not sound in fraud:

> There is no requirement under RCW § 19.190.020 that the sender 'know' that the information in the subject line or transmission path of the mail is 'false and misleading.' Also, RCW § 19.190.020 does not require the false or misleading information in the subject line or transmission path to be 'material.' Further, RCW § 19.190.020 does not require the recipient of an email that violates the statute [to] take any action 'in reliance upon the representation' in the email. Neither intent on the part of the sender, nor detrimental reliance on the part of the recipient, is required to prove a violation of RCW § 19.190.020, like it is required to prove fraud. Therefore, the Court concludes that Plaintiff's claims under Washington's Commercial Electronic Mail Act do not trigger the heightened pleading requirements of Rule 9(b).

375 F. Supp. 2d at 1048.

Under California law, the "indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." <u>Vess</u>, 317 F.3d at 1105 (quoting <u>Moore v. Brewster</u>, 96 F.3d 1240, 1245 (9th Cir. 1996)). As both parties acknowledge, the required elements of

7

a claim by an internet access provider under the CAN-SPAM Act or California Business & Professions Code § 17529 do not include all of the elements of common law fraud. Therefore, in accordance with Gordon, the Court finds that Rule 9(b) does not necessarily apply to Plaintiff's claims.

Instead, the Court looks to whether Plaintiff has alleged either some fraudulent conduct or a unified course of fraudulent conduct. Plaintiff alleges that it was injured by "fraudulent email attacks." Complaint ¶ 11. It alleges that Defendants sent or caused to be sent "deceptive" electronic mail messages containing "falsified, misrepresented, or forged header information" and subject lines "likely to mislead a recipient" about material facts regarding its contents. Id. ¶¶ 17-20, 35-36. It alleges that Defendants used "stolen or hijacked email identities" to send the spam and that the emails contained domain names registered to "unknown and false entities." Id. ¶¶ 25-26, 35.

These allegations do not describe a unified course of fraudulent conduct. Plaintiff does not allege, for instance, that Defendants use the allegedly fraudulent email to induce readers to enter into fraudulent mortgage deals. Therefore, the Court finds that the circumstances to be plead with particularity do not include the Mortgage Defendants' scienter or their relationship with the Spammer Defendants.

Nevertheless, Plaintiff does specifically allege that the contents of the emails themselves, including their headers and subject line information, were fraudulent, and the Court therefore

8

concludes that Rule 9(b) applies to those averments of fraud. Plaintiff has specifically identified the time period during which the allegedly fraudulent emails were sent. With respect to the content of the electronic messages, however, Plaintiff relies in part on the Declaration of Nella White, who attaches examples of the allegedly fraudulent emails, in order to show that Plaintiff has meet the heightened pleading standard. As noted in Section I above, the Court will not consider Plaintiff's supplemental evidence in evaluating the sufficiency of the complaint. However, even disregarding Ms. White's declaration, the Complaint itself states with particularity how the allegedly fraudulent header information purporting to identify the sender of the email was false, Complaint ¶ 25, explaining that the emails included domain names "such as wwmort.com, b3mort.com, vcmort.com, great-3.com and others" that were registered to unknown and false entities. Id. ¶ 26.

However, other aspects of Plaintiff's allegations of fraud are not plead with particularity. Plaintiff alleges that Defendants sent email with subject lines that "were false and misleading and would be likely to mislead a recipient," ¶ 36, but does not provide an example or otherwise specify the manner in which the subject lines were false and misleading. In addition, Plaintiff charges "Defendants," collectively, with responsibility for sending the allegedly fraudulent emails. Ascribing to all Defendants the act of sending the allegedly fraudulent email also runs afoul of Rule 9(b).

Defendants also claim that Plaintiff has failed to plead with

9

the requisite particularity the basis for liability for those who did not literally send the alleged spam, i.e. the Mortgage Defendants. However, as explained in Section III below, multiple Defendants may be held liable under the CAN-SPAM Act if they "initiated" illegal emails, including either actually sending the message or paying or inducing another to send the message while consciously avoiding knowledge that the messages violated the law. Plaintiff's averments of fraud do not extend to the initiation of the allegedly fraudulent commercial emails, but only to their content. Therefore, the Court finds that Plaintiff need not plead with particularity the circumstances surrounding the initiation of the alleged email; for instance, Plaintiff need not plead particular facts showing a business relationship between the Mortgage Defendants and the Spammer Defendants.

Therefore, the Court grants Defendants' motion to dismiss the Complaint on the grounds that Plaintiff's allegations of fraud, which form the basis of both Plaintiff's federal and State claims, have not been plead with particularity as required by Rule 9(b). Plaintiff is granted leave to file an amended complaint stating with particularity the identity of the sender or senders of the alleged spam. If Plaintiff chooses to base its CAN-SPAM Act claim on the nature of the allegedly fraudulent subject lines, this must also be plead with particularity.

III. The CAN-SPAM Act Claim

Aegis also moves under Rule 12(b)(6) to dismiss Plaintiff's claim under the CAN-SPAM Act.

The CAN-SPAM Act makes it "unlawful for any person to initiate

10

the transmission, to a protected computer, of a commercial electronic mail message . . . that contains, or is accompanied by, header information that is materially false or materially misleading." 15 U.S.C. § 7704(a)(1). It also prohibits a person from initiating the transmission of commercial email messages

> if such person has actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject of the message.

15 U.S.C. § 7704(a)(2). "[M]ore than one person may be considered to have initiated a message." 15 U.S.C. § 7702(9). The statute defines "initiate" as "to originate or transmit such message or to procure the origination or transmission of such message." Id. In actions brought by internet access service providers, a special definition of "procure" applies. 15 U.S.C. § 7706(g)(2). Combining the basic definition with the special definition, "procure" means,

> intentionally to pay or provide other consideration to, or induce, another person to initiate such a message on one's behalf with actual knowledge, or by consciously avoiding knowing, whether such person is engaging, or will engage, in a pattern or practice that violates this chapter.

15 U.S.C. §§ 7702(12) and 7706(g)(2).

In order to hold the Mortgage Defendants liable under the CAN-SPAM Act, Plaintiff must therefore prove that they paid or induced the Spammer Defendants to initiate commercial email messages and that the Mortgage Defendants acted either with actual knowledge, or by consciously avoiding knowing, that the Spammer Defendants' acts were illegal. This set of facts could be proved consistent with

11

the existing allegations in the Complaint. Indeed, the Complaint directly alleges that Aegis and the other Mortgage Defendants "approved or ratified" the conduct of the other Defendants. Complaint ¶ 14. Even if the heightened pleading standards of Rule 9(b) did apply to Plaintiff's entire CAN-SPAM Act claim, the allegations regarding the Mortgage Defendants' scienter could be averred generally.

Therefore, the Court denies Aegis' motion to dismiss Plaintiff's CAN-SPAM claim on this ground. However, Plaintiff must replead its CAN-SPAM claim in order to comply with Rule 9(b), as described above.

III. California Anti-Spam Law

Aegis moves to dismiss Plaintiff's claim under California's Business and Professions Code § 17529.5, for failure to state a claim and for failure to state the underlying factual allegations with reasonable particularity.

Section 17529.5(a) provides,

> It is unlawful for any person or entity to advertise in a commercial email advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances:
> . . .
> (2) The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information.
> . . .
> (3) The e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

A "commercial email advertisement" is defined as "any electronic mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any

12

property, goods, services, or extension of credit." Cal. Bus. & Prof. Code § 17529.1(c). The statute creates a cause of action based on violations of § 17529.5 for "electronic mail service provider[s]," among others. Cal. Bus. & Prof. Code § 17529.5(b)(1)(A)(ii).

Aegis argues that Plaintiff's claim must be dismissed because it does not adequately allege or meet the pleading requirements for California claims of unfair business practices. See Khoury v. Maly's of Cal., Inc., 14 Cal. App. 4th 612, 619 (1993) (holding that plaintiffs alleging unfair business practices must state with reasonable particularity facts supporting the statutory elements of the violation)[2]; Emery v. Visa Int'l Serv. Ass'n, 95 Cal. App. 4th 952, 960 (2002) (holding that actions brought under California's unfair business practices act cannot be predicated on vicarious liability). Aegis states that the California statute requires that a defendant "actually send the alleged spam or cause it to be sent." Aegis' Mot. Dismiss at 5. Yet Aegis' argument is

---

[2] Plaintiff argues that this requirement for pleading unfair business practices with "reasonable particularity" should not be applied here because it is not required by the Federal Rules. See Empress LLC v. City and County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005) (stating in dicta that the logical conclusion of the holding in Swierkiewicz and similar cases is that "a heightened pleading standard should only be applied when the Federal Rules of Civil Procedure so require"). Aegis notes that other federal courts have applied the heightened pleading standard required by Khoury, but the case it cites, Silicon Knights, Inc., v. Crystal Dynamics, Inc., 983 F. Supp. 1303, 1316 (N.D. Cal. 1997), was decided prior to Swierkiewicz and Empress. Although it is not clear whether the Ninth Circuit intended by the language in Empress to dispense with the requirement of a heightened pleading standard with respect to State law claims, the Court need not decide that question because it finds that Plaintiff has failed state a claim even under normal notice pleading standards.

contradicted by the language of the statute, which appears to extend liability to anyone who "advertises" in a commercial email containing a misleading header or subject line, regardless of whether the advertiser was also the one who actually sent the spam or caused it to be sent. Cf. Cal. Bus. & Profs. Code § 19529.2 (prohibiting the initiation or advertisement in unsolicited commercial emails sent from or to California).

Nevertheless, the Court concludes that the Complaint does not state a claim under § 17529.5, not for the reasons identified by Aegis, but because Plaintiff nowhere alleges that the Mortgage Defendants "advertised" in the alleged commercial e-mail messages. Therefore, the Court dismisses Plaintiff's California anti-spam claim. Plaintiff may include a § 17529.5 claim in an amended complaint if it can state, truthfully and without contradicting the original complaint, that Defendants advertised their services in the allegedly fraudulent emails.

IV. Civil Conspiracy

Aegis moves to dismiss Plaintiff's claim for civil conspiracy on the grounds that Plaintiff has failed to allege that the Mortgage Defendants intended to aid in the commission of the conspiracy.

The required elements of a claim for civil conspiracy under California law are (1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy,

14

and (3) damages arising from the wrongful conduct.[3] Kidron v. Movie Acquisition Corp., 40 Cal. App. 4th 1571, 1581 (1995). "Actual knowledge, without more, is insufficient to serve as a basis for a conspiracy claim; "knowledge of the planned tort must be combined with intent to aid in its commission." Id. at 1582. Under California law, civil conspiracy is not a separate cause of action. Applied Equipment v. Litton Saudi Arabia, 7 Cal. 4th 503, 510 (1994). Conspiracy is simply a way to impose liability upon a defendant who did not commit a tort himself or herself but who shared with the immediate tortfeasor a common plan to harm the plaintiff. See id. at 510-11.

Aegis asserts that in order sufficiently to allege civil conspiracy, a complaint must state "with sufficient factual particularity" the existence of a mutual understanding or agreement among the alleged tortfeasors. Masco Contractors Serv. W. v. New Hampshire Ins. Co., 2005 WL 405361, *6 (N.D. Cal. Feb. 17, 2005) (quoting Alfus v. Pyramid Tech. Corp., 745 F. Supp. 1511, 1521 (N.D. Cal. 1990)). However, the cases in which courts have applied this heightened pleading standard involve claims of civil conspiracy to commit fraud, specifically. See Wasco Prods., Inc., v. Southwall Tech., Inc., 435 F.3d 989, 990-91 (9th Cir. 2006)

---

[3] Plaintiff relies on Saunders v. Superior Court, 27 Cal. App. 4th 832, 846 (1994), for the proposition that civil conspiracy involves the breach of a duty. Plaintiff confuses the elements of civil conspiracy with the elements of liability for aiding and abetting the commission of an intentional tort. The portion of Saunders cited by Plaintiff refers only to the latter. If Plaintiff wishes to claim that the Mortgage Defendants aided and abetted others in the commission of an intentional tort, it must amend its complaint accordingly.

15

(holding that plaintiffs must plead California civil conspiracy claim with particularity where object of agreement is fraudulent). Here, however, as described in Section II, Plaintiff has alleged some fraudulent conduct, but not a unified course of fraudulent conduct or an overriding fraudulent objective. Therefore, the Court will not apply a heightened pleading standard to Plaintiff's civil conspiracy claim.

The Court has granted Plaintiff leave to amend its complaint in order to allege the particularities of fraud related to the CAN-SPAM Act and to allege a violation of California Business & Professions Code § 17529.5. If Plaintiff successfully pleads these claims, it would fulfill the civil conspiracy requirement of pleading an underlying violation. Although Plaintiff does not specifically allege that the Mortgage Defendants intentionally entered into an agreement to violate the law, it does state that the Mortgage Defendants "conspired" with the Spammer Defendants. Complaint ¶ 10. Plaintiff alleges that the Mortgage Defendants "were informed and knew prior to conspiring with SPAMMERS that SPAMMERS had been named in a federal prosecution for violations of the CAN-SPAM Act and California Business and Professions Code § 17529.5." Complaint ¶ 45. However, Plaintiff may prove, consistent with this allegation, that the Mortgage Defendants entered into an agreement with the Spammer Defendants with the intent to commit violations of the anti-spam laws.

Therefore, the Court denies Aegis' motion to dismiss Plaintiff's claim for civil conspiracy against the Mortgage Defendants, subject to Plaintiff's successful statement of at least

16

one underlying claim.

V. Quicken's Motion for Security

Defendant Quicken moves for an order requiring Plaintiff to post security for the costs and attorneys' fees Quicken expects to incur in this action. Plaintiff opposes the motion.

Section 7706(g)(4) of the CAN-SPAM Act allows the district court, in its discretion, to "require an undertaking for the payment of the costs of such an action [brought by an internet access provider], and assess reasonable costs, including reasonable attorneys' fees, against any party." In addition, Civil Local Rule 65.1-1 provides, "Upon demand of any party, where authorized by law and for good cause shown, the Court may require any party to furnish security for costs which can be awarded against such party in an amount and on such terms as the Court deems appropriate." Federal courts also have inherent authority to require plaintiffs to post security for costs. In re Merrill Lynch Relocation Mgmt., Inc., 812 F.2d 1116, 1121 (9th Cir. 1987).

Quicken argues that it is entitled to security for its attorneys' fees and costs because (1) it is likely to succeed on the merits; and (2) Plaintiff is violating an agreement to release Quicken from liability in exchange for information.

The Court finds that Quicken is not likely to succeed on the merits. Plaintiff has shown at least some evidence in support of its allegations. Moreover, this is a new area of law in which the scope of liability is not clear; requiring Plaintiff to post a security bond at this juncture could chill private enforcement of anti-spam laws.

17

With respect to the alleged release of liability, the Court is troubled by counsel's contradictory assertions and accusations. The existence of an oral contract releasing Quicken from liability appears to be a disputed issue of fact which the Court cannot resolve based on the evidence before it. Amy Bishop, counsel for Quicken, declares under oath,

> I told Mr. [Jason] Singleton[, counsel for Plaintiff,] words to the effect that 'it is understood that the release of this information to you is conditioned upon you releasing Quicken Loans.' Mr. Singleton agreed to release Quicken Loans in exchange for the information. Mr. Singleton did not tell me that he had filed a lawsuit against Quicken Loans two days earlier, but instead asked me to cooperate by providing the information I had.
> Relying on the release, I then explained to Mr. Singleton that Quicken Loans received the lead from its affiliate, Azoogle . . . . Mr. Singleton thanked me and promised to send me a written release to memorialize the oral agreement.

Bishop Decl. ¶¶ 9-10.

Mr. Singleton, however, denies under oath that he agreed to release Quicken from liability, stating generally, "Ms. Bishop's statement that she and I had a telephone conversation, wherein I agreed to release Defendant, is untrue." Singleton Decl. ¶ 3.

The Court will not require Plaintiff to post security for Quicken's attorneys' fees and costs. However, the Court will entertain a motion for attorneys' fees from the party who prevails on the issue of the alleged liability release.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Aegis' motion to dismiss Plaintiff's complaint (Docket No. 20), with respect to Plaintiff's averments of fraud and its claim under California Business and Professions Code § 17529.5. Plaintiff may file an

18

amended complaint within two weeks of the date of this order. The Court DENIES Quicken's motion for an order requiring Plaintiff to post security (Docket No. 54).

In its amended complaint, Plaintiff must state with particularity the nature of the allegedly fraudulent subject lines and the identity of the sender or senders of the alleged spam. Plaintiff may include in the amended complaint its civil conspiracy claim, provided it is able successfully to state an underlying claim under either the federal or State anti-spam laws. Plaintiff may only bring a § 17529.5 claim in its amended complaint if it can state, truthfully and without contradicting the original complaint, that Defendants advertised their services in the allegedly fraudulent emails.

IT IS SO ORDERED.

Dated: 6/30/06

CLAUDIA WILKEN
United States District Judge

19