IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIS INTERNET SERVICES,<br><br>    Plaintiff,<br><br>  v.<br><br>OPTIN GLOBAL, INC., et al.,<br><br>    Defendants.<br>_____/ | No. C 05-5124 CW<br><br>ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS AND DENYING THEM IN PART |

    Defendants Michael Cuervo and John Terrence Dorland, Quicken Loans (Quicken), and Aegis Lending Corporation (Aegis) each move separately and join each other's motions to dismiss Plaintiff Asis Internet Service's First Amended Complaint (FAC) pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants Bruce Lerner, Chris Valley, National Fidelity Funding, Inc., Stateside Mortgage, Inc., American Home Equity Corp., and Michael Garcia (Mortgage

Defendants) join in the motions to dismiss.[1]  Plaintiff opposes these motions.  These matters have been submitted on the papers. Having considered all of the papers filed by the parties, the Court grants in part and denies in part Defendants' motions to dismiss and grants Plaintiff leave to file an amended complaint.

## BACKGROUND

Plaintiff Asis Internet Services is a California corporation that provides internet access services.  On December 12, 2005, Plaintiff filed a complaint alleging that the Spammer Defendants directed, controlled and participated in "spamming," causing more than 10,000 deceptive and unsolicited commercial electronic messages to be sent to Plaintiff's computer server between October 25, 2005 and November 14, 2005.  The header information for those emails was falsified, misrepresented or forged in a way that would mislead a reasonable recipient as to the contents and subject matter of the message.  The complaint further alleged that several mortgage brokers (the Mortgage Defendants) "conspired with and at all times supported," and benefitted from, the Spammer Defendants' actions.  Complaint § 10, 12.

The complaint brought claims under the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (CAN-SPAM Act), 15 U.S.C. § 7701 et seq. and California's Business and Professions Code § 17529 et seq., both of which restrict the use of

---

[1] Optin Global, Inc., Vision Media Ltd., Rich Yang and Peonie Pui Tang Chan (collectively, the Spammer Defendants), Leads Limited and Azoogle.com (collectively, the Lead Generator Defendants), and Francis Prasad and Emerald Home Loan, Inc. (members of the Mortgage Defendants) do not join in the motions to dismiss.  Prasad has not filed an answer to the First Amended Complaint.

2

unsolicited commercial email.  Plaintiff also brought a civil conspiracy claim against all Defendants.

Aegis moved pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) to dismiss the complaint against it.  Aegis argued (1) that Plaintiff's federal and State anti-spam claims sounded in fraud and that Rule 9(b) therefore required Plaintiff to plead the claims with particularity; (2) that Plaintiff failed to demonstrate that Defendants "initiated" the spam as required by the CAN-SPAM Act; (3) that Plaintiff failed to allege the required elements of the State anti-spam claim; and (4) that Plaintiff failed to allege that Mortgage Defendants intended to aid in the commission of the conspiracy as required by California law.  The other Mortgage Defendants named in the original complaint joined the motion to dismiss.

The Court granted the motion to dismiss in part and denied it in part, finding that Federal Rule of Civil Procedure 9(b) applied to averments of fraud in Plaintiff's claims under the CAN-SPAM Act, 15 U.S.C. § 7701 et seq. and California Business and Professions Code § 17529 et seq., and that California Business and Professions Code § 17529.5(a) extends liability to anyone who "advertises" in a commercial email containing a misleading header or subject line.  The Court further found that the allegations in Plaintiff's complaint were sufficient to allege the civil conspiracy element of entering into an agreement with the intent to commit the underlying violation.

Therefore, the Court granted the motion to dismiss in part and granted Plaintiff leave to file an amended complaint.  The Court

3

1  advised Plaintiff that in its amended complaint it (1) "must state
2  with particularity the nature of the allegedly fraudulent subject
3  lines and the identity of the sender or senders of the alleged
4  spam" to go forward with its claims under either federal or State
5  anti-spam laws and (2) must demonstrate "that Defendants advertised
6  their services in the allegedly fraudulent emails" to go forward
7  with the § 17529.5 claim.  June 30, 2006 Order at 19.  Further the
8  Court instructed Plaintiff that it "may include . . . its civil
9  conspiracy claim, provided it is able successfully to state an
10 underlying claim under either the federal or State anti-spam laws."
11 Id.

12     Plaintiff filed its First Amended Complaint on July 14, 2006,
13 removing some defendants and adding others.  Of particular
14 significance to the instant motions, Plaintiff included two new
15 defendants, Leads Limited, Inc. and Azoogle.com, Inc. (together the
16 Lead Generators).  The Lead Generators are described as "Internet
17 marketing companies in the business of generating sales leads by
18 hiring and managing individuals and groups to send emails to
19 perspective [sic] purchasers doing business in the United States."
20 FAC ¶ 9.

21     As in the original complaint, Plaintiff alleges that the
22 Spammer Defendants directed, controlled and participated in
23 "spamming," causing more than 10,000 deceptive and unsolicited
24 commercial electronic messages to be sent to Plaintiff's computer
25 server between October 25, 2005 and November 14, 2005.  Plaintiff
26 also alleges that the header information for those emails was
27 falsified, misrepresented or forged in a way that would mislead a
28

4

reasonable recipient as to the contents and subject matter of the message.

In the FAC, Plaintiff alleges that Spammer Defendants sent these emails while working as employees or agents of the Lead Generator Defendants, who had pre-existing contracts to advertise the Mortgage Defendants' financial services and to deliver sales leads to them. Therefore, Plaintiff alleges that the Mortgage Defendants "conspired with and at all times supported the Lead Generators and Spammers" and "benefitted financially and will continue to benefit from their conspiratorial relationship with Lead Generators and Spammers." FAC ¶ 13, 16. Plaintiff alleges that Mortgage Defendants "knew or consciously avoided knowing" that the Lead Generators' and Spammers' actions were injuring Plaintiff.

## LEGAL STANDARD

As stated in the Court's order regarding the first motion to dismiss, a motion to dismiss for failure to state a claim will be denied unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Falkowski v. Imation Corp., 309 F.3d 1123, 1132 (9th Cir. 2002), citing Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

5

DISCUSSION

I.   Response to the Court's Order

Defendants argue that Plaintiff has failed to comply with the Court's order dismissing the original complaint and granting leave to amend to plead averments of fraud with particularity as required by Federal Rule of Civil Procedure 9(b).

   A.   Nature of the Allegedly Fraudulent Subject Lines

In granting leave to amend the complaint, the Court advised Plaintiff that it "must state with particularity the nature of the allegedly fraudulent subject lines."  June 30, 2006 Order at 19. In its FAC, Plaintiff includes examples and states that the subject lines "were clearly intended to get someone to open the email by telling them that their loan was pre-approved ('Pre-approved rate #uzthxvmll') or that a loan was approved ('Notice: Loww Mortgage Ratee Approved')."[2]  FAC ¶¶ 33, 51.

This statement is similar to Plaintiff's statements regarding the non-existent domain names that this Court already deemed sufficiently particular when considering the original complaint. There the Court found that the complaint "state[d] with particularity how the allegedly fraudulent header information purporting to identify the sender of the email was false, [] explaining that the emails included domain names [] that were registered to unknown and false identities."  June 30, 2006 Order at 9.  Plaintiff has similarly alleged that the subject lines led

---

[2]Plaintiff alleges that the misspellings in the headers are intentionally included to deceive Plaintiff's spam-blocking software.  FAC ¶ 33.

the recipients to believe that a loan was approved or pre-approved, when in fact the email was sent for the purpose of collecting information for mortgage companies to use in seeking customers.

Defendants point to the fact that Plaintiff has only provided two examples of headers, while they seek relief for over 10,000 separate emails. However, the examples provided, together with the explanation of the ways in which they were likely to mislead readers, are sufficient to satisfy the pleading requirements of Rule 9(b).

Therefore, the Court denies Defendants' motions to dismiss the FAC on the grounds that Plaintiff failed to state with particularity the nature of the allegedly fraudulent subject lines.

B.   Identity of the Sender(s) of the Spam

The Court also advised Plaintiff that it must allege with particularity the sender or senders of the allegedly fraudulent spam. June 30, 2006 Order at 19. However, the Court specifically found that "Plaintiff's averments of fraud do not extend to the initiation of the allegedly fraudulent commercial emails, but only to their content." Id. at 10. The Court therefore found that Plaintiff need not plead with particularity facts surrounding the initiation of the emails.

In its FAC, Plaintiff identifies the Spammer Defendants as the individuals who sent the emails, alleging that "Defendants SPAMMERS transmitted, for and in the hire of Defendants LEAD GENERATORS and MORTGAGE BROKERS, in excess of 10,000 deceptive and unsolicited commercial electronic mail advertisements." FAC ¶ 48. Further, Plaintiff indicates, "The sending of these illegal advertisements

7

was procured, from the SPAMMERS, working as employees or agents of LEAD GENERATORS, under contract for delivery to the MORTGAGE BROKERS." Id.

Narrowing the allegations of fraud to those emails that were sent by three identified Spammer Defendants acting as the employees or agents of two identified Lead Generator Defendants together with the existing particularized statements regarding the content of the emails is sufficient to "give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge" as required by Rule 9(b). Semegen, 780 F.2d at 731. Therefore, the Court finds that Plaintiff has identified with sufficient particularity the senders of the allegedly fraudulent spam.

However, as Defendants note, Plaintiff only makes the particularized statement with respect to its State anti-spam claim, and continues to allege only that "Defendants sent in excess of 10,000 separate items of electronic mail" with respect to its federal anti-spam claim. FAC ¶¶ 31, 48. Therefore, the Court denies Defendants' motion to dismiss Plaintiff's State anti-spam claim but grants the motion to dismiss Plaintiff's federal anti-spam claim. Because both claims are based on the same factual basis, the Court grants Plaintiff leave to amend to include the particularized statement from the State cause of action in the federal cause of action. If Plaintiff does so, the Court will not entertain an additional motion to dismiss.

II. The CAN-SPAM Act Claim

In deciding the first motion to dismiss, the Court rejected

8

Defendants' claim that Plaintiff's original complaint failed to state a claim under the CAN-SPAM Act because it failed to allege that Mortgage Defendants initiated the spam in question. Defendants now argue that Plaintiff's FAC fails to allege that Mortgage Defendants initiated the emails because of the addition of the third category of defendants, the Lead Generator Defendants. As this Court previously found, to state a claim against the Mortgage Defendants under the CAN-SPAM Act, Plaintiff must "prove that they paid or induced the Spammer Defendants to initiate commercial email messages and that the Mortgage Defendants acted either with actual knowledge, or by consciously avoiding knowing, that the Spammer Defendants' acts were illegal." June 30, 2006 Order at 11.

    Defendants argue that the inclusion of the Lead Generators removes the potential for liability for the Mortgage Defendants because the FAC alleges that the Lead Generators hired the Spammers and therefore provided the consideration required by the statute. Aegis Motion to Dismiss at 5. Plaintiff counters by arguing that the statute does not require it to plead intent at all. Opposition at 3-4. The Court finds neither position convincing. While the statute clearly requires that the plaintiff demonstrate intent on the part of the defendant, it requires a demonstration of intent "to pay or provide other consideration, <u>or induce</u>, another person to initiate such a message on one's behalf." 15 U.S.C. § 7702(12) (emphasis added). Here, Plaintiff could prove consistent with the allegations in the FAC that, through their contracts with Lead Generator Defendants, Mortgage Defendants knowingly induced Spammer

9

1 Defendants to send the illegal email messages.

2 Just as Plaintiff previously alleged that the Mortgage 3 Defendants "approved or ratified" the conduct of the other 4 defendants, Plaintiff now alleges that there existed business 5 relationships between the Mortgage Defendants, the Lead Generator 6 Defendants and the Spammer Defendants.  Plaintiff also alleges that 7 those business relationships included contracts between the Lead 8 Generator Defendants and the Mortgage Defendants to "advertise 9 MORTGAGE BROKERS financial services and deliver sales leads" and 10 that "MORTGAGE BROKERS knew, or consciously avoided knowing, at all 11 times that LEAD GENERATORS and SPAMMERS were violating the CAN-SPAM 12 ACT, and California Business and Professions Code § 117529.5 13 resulting in injury to Plaintiff."  FAC ¶ 14-15.

14 Because Plaintiff did not allege fraud with respect to the 15 initiation of the emails, the Court found that "Plaintiff need not 16 plead with particularity the circumstances surrounding the 17 initiation of the alleged email" and in particular that "Plaintiff 18 need not plead particular facts showing a business relationship 19 between the Mortgage Defendants and the Spammer Defendants."  June 20 30, 2006 Order at 10.  Plaintiff could prove consistent with the 21 allegations in the FAC that Mortgage Defendants knowingly induced 22 Spammer Defendants to send the illegal spam through Lead Generator 23 Defendants.

24 Therefore, the Court denies Defendants' motion to dismiss 25 Plaintiff's CAN-SPAM claim for failure to state a claim.

26 III. § 17529.5 Claim

27 The Court advised that, in order to include a § 17529.5 claim

28

10

in the FAC, Plaintiff must be able to allege "that Defendants advertised their services in the allegedly fraudulent emails." June 30, 2006 Order at 14. In paragraph 49 of the FAC, Plaintiff quotes a typical email that can be construed as advertising the Mortgage Defendants' services. While it does not name any of the defendants by name, the email does offer "up to 5 quotes from interested lenders." FAC ¶ 49. This clearly demonstrates that the Mortgage Defendant's services are being offered through the allegedly fraudulent emails.

Defendants attempt to argue that the FAC identifies only "USA Lenders Network" as advertising its services through the email. However, the email offers quotes from unidentified "interested lenders." FAC ¶ 49. Further, completing the form at the associated website leads to responses from each of the Mortgage Defendants. Although the Mortgage Defendants are not individually named in the email cited in the FAC, their services are clearly referenced. The Court finds that this is sufficient to state a claim under § 17529.5(b). Therefore, the Court denies Defendants' motion to dismiss for failure to state a claim.

V. Plaintiff's Civil Conspiracy Claim

In its June 30, 2006 Order, the Court denied Defendants' motion to dismiss Plaintiff's claim for civil conspiracy against Mortgage Defendants, subject to Plaintiff's successful statement of at least one underlying claim. Defendants argue that Plaintiff has not successfully stated a claim and that the civil conspiracy claim should therefore be dismissed. However, as discussed above, the Court finds that Plaintiff has stated a claim under both the CAN-

11

SPAM Act and § 17529.5(b). Therefore, the Court denies Defendants' motion to dismiss Plaintiff's civil conspiracy claim.

V. Quicken Loans' Motion Based on Attachment of the Bishop Declaration

Defendant Quicken argues that Plaintiff has "pled itself out" of its claim against Quicken because it attached to the FAC the declaration of Amy Bishop, Quicken's Associate Corporate Counsel. Under Federal Rule of Civil Procedure 10(c), "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." The Ninth Circuit has held that, in considering a motion to dismiss for failure to state a claim, courts "are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295 (9th Cir. 1998).

Bishop's declaration states that Quicken requires the companies it works with to agree to Quicken's policies and contractual provisions requiring compliance with the CAN-SPAM Act and related laws. Bishop Decl. at ¶ 3. In particular, the declaration addresses the contract between Quicken and Azoogle.com, a Lead Generator Defendant, stating, "In its contract with Quicken Loans, Azoogle agrees to abide by Quicken Loans' privacy policy for companies with whom Quicken Loans does business and that policy requires compliance with junk email and other applicable laws. Moreover, in its contract with Quicken Loans, Azoogle 'represents and warrants that it has obtained any and all requisiste consent from consumers to pass their information to [Quicken.]'" Id. at ¶ 6.

Quicken argues that this clearly establishes a lack of knowledge and intent on its part, which "completely contradicts and rebuts Plaintiff's allegations in the [FAC]." Quicken Motion to Dismiss at 6. Citing <u>Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend</u>, 163 F.3d 449 (7th Cir. 1998), Plaintiff responds that it attached the declaration to its FAC for the limited purpose of establishing the existence and role of the Lead Generators and that it is not bound by other self-serving statements in the declaration. Opposition to Motion to Dismiss at 10-11. Quicken counters by citing <u>Thompson v. Illinois Dept. of Prof. Reg.</u>, 300 F.3d 750 (7th Cir. 2002). In <u>Thompson</u>, the Seventh Circuit noted that <u>Northern Indiana Gun</u> "reaffirmed the well-settled rule that when a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations." 300 F.3d at 754. However, the <u>Thompson</u> court characterized <u>Northern Indiana Gun</u> as appropriately "appl[ying] a more flexible approach because the attached exhibit was not at issue in the litigation." Here, the declaration is not at issue in the litigation.

Because the declaration is not a written instrument at issue in this litigation, the self-serving statements included therein do not bind Plaintiff. Therefore, the Court finds that the attachment of the Bishop declaration to the FAC does not negate Plaintiff's claims against Quicken.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motions to dismiss the FAC (Docket Nos. 87, 91, 99) in part and

13

denies them in part and grants Plaintiff leave to amend to plead with particularity the identity of the senders of the spam with respect to its federal cause of action.[3] The amended complaint must be filed within a week of the date of this order. The case management conference is rescheduled for October 27, 2006 at 1:30 in order to allow Defendants Azoogle.com, Inc. and Leads Limited, Inc. to answer the FAC.

IT IS SO ORDERED.

Dated: 9/27/06

CLAUDIA WILKEN
United States District Judge

---

[3]The Court grants Defendant Aegis' and Defendants Dorland and Cuervo's Requests for Judicial Notice (Docket Nos. 90, 96).
The Court also strikes from the record exhibits A and B to exhibit 1 of the FAC and orders Plaintiff to file redacted versions of the exhibits omitting identifying information including the names of individuals seeking mortgages, home telephone numbers, personal email addresses and home addresses. Plaintiff need not file unredacted versions under seal.

14