**Jason K. Singleton**, State Bar #166170
lawgroup@sbcglobal.net
**Richard E. Grabowski**, State Bar #236207
rgrabows@pacbell.net
**SINGLETON LAW GROUP**
611 "L" Street, Suite A
Eureka, CA 95501
(707) 441-1177
FAX  441-1533

Attorneys for Plaintiff, ASIS Internet Services

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIS INTERNET SERVICES, a California corporation,<br><br>　　　　Plaintiff,<br>vs.<br><br>OPTIN GLOBAL, INC., a Delaware Corporation, also dba Vision Media Limited Corp., USA Lenders Network, USA Lenders, and USA Debt Consolidation Service; et al.,<br><br>　　　　Defendants. | Case No.  C-05-5124 JCS<br><br>**REPLY TO OPPOSITION TO MOTION FOR ISSUANCE OF LETTERS ROGATORY; DECLARATION OF JASON K. SINGLETON IN SUPPORT HEREOF**<br><br>Date: June 22, 2007<br>Time: 9:30 am<br>Courtroom: A |

## INTRODUCTION

Defendant Azoogle offers three arguments in opposition to Plaintiff's request for issuance of Letters Rogatory.  One, that Plaintiff has failed to provide Azoogle advance notice of third party subpoena's prior to service on the responding party; two, that Plaintiff has not shown any potential relevance to information held by Bluerockdove.com; and three, the subpoenas Plaintiff has served have not provided any relevant data.  Each of Azoogle's arguments are utterly without factual or legal support.

**1.	Plaintiff has clearly properly served Azoogle with all third party subpoenas.**

Azoogle is of the opinion that Plaintiff must serve Azoogle with third party subpoenas prior to the time they are *issued*.  (Def Opp. Page 1 line 25).  That is, Azoogle apparently wishes to be served with subpoenas prior in time to Plaintiff's counsel actually signing them.

1  The law is clear, the duty is to serve third party subpoenas, on opposing counsel, prior in time
2  to the subpoenas *being served on the responding party*.  **Butler v Biocore Medical**
3  **Technologies, Inc**., 348 F.3d 1163, 1173 (10th Cir. 2003) (see also cases cited therein).  The
4  idea being, to allow a party litigant time to object to the subpoena if necessary.
5      Plaintiff's counsel uses process servers to serve third party subpoenas.  Plaintiff's
6  counsel sent each third party subpoena, via mail, to both the process server and opposing
7  counsel often emailing or faxing the subpoena to Defendant.  Since it takes a few days for the
8  subpoena to reach the process server via mail, and some additional time for the process
9  server to actually go out and serve the subpoena, Defendant has not stated it was served with
10 a subpoena after any respondent was.
11     Defendant's spreadsheet (Exhibit "A" to Jeff Rosenfeld's Declaration) is misleading.  It
12 shows the date the subpoena was <u>*issued*</u>, and the date the subpoena was actually *received* by
13 Azoogle's counsel.  That does not show when Azoogle's copy of the subpoena was put in the
14 mail to them, or when it was put in the mail to the process server, or even when it was served
15 on the responding party.  Sometimes a subpoena would be issued (signed) by Plaintiff's
16 counsel, but would not be sent out to the process server and Azoogle until the office staff were
17 available to do so.  Not surprisingly, not everything that is executed by Plaintiff's counsel is
18 copied, a proof of service drafted, and sent out in the mail the exact second it is signed by
19 Plaintiff's counsel.
20     Complete documentation of when each subpoena was sent to a process server, and to
21 Azoogle's counsel, is set forth in detail in the Declaration of Roberta Alliston submitted
22 herewith.  There is absolutely no merit whatsoever to Azoogle's contention that Plaintiff was
23 not serving Azoogle with third party subpoenas.
24     The Declaration of Jeffery Rosenfeld in Opposition, page 2, paragraph 5 refers to
25 Plaintiff's counsel's email confirming only two subpoena's had been sent as of that time,
26 March 7th.  (Exhibit "C" to Rosenfeld Declaration).  Mr. Rosenfeld goes on to declare that, "*In*
27 *fact, as of this date, Plaintiff had served three (3) third party subpoenas.*" Page 2 line 21.  Mr.
28 Rosenfeld offers no proof <u>*whatsoever*</u> of a third subpoena existing as of March 7th, and indeed

a review of Mr. Rosenfeld's spreadsheet, Exhibit "A" to his Declaration, shows only two subpoena's having been issued, those on February 7th. The third was not issued until March 30th. Paragraph 5 of Mr. Rosenfeld's Declaration is cut from whole cloth.

Indeed, it is not even clear why Azoogle manufactured this non-issue. Azoogle does not complain that it had any objections to any of the subpoenas, or that if it had objections, it was prevented from timely airing them.

Plaintiff's counsel would like to address one other issue raised by Azoogle. Azoogle twice noticed, and twice cancelled, Plaintiff's deposition. The last instance, was immediately prior to the deposition date. As a result, Plaintiff's counsel unnecessarily incurred non-refundable hotel costs. Defendant was asked to reimburse those costs, and has refused to do so to this day.

Now, Azoogle was adamant (even vitriolic) that Plaintiff must duplicate all documents received as a result of third party subpoena's, at Plaintiff's expense, and provide them to Azoogle. (Exhibit "A" to the Declaration of Jason Singleton submitted herewith) Plaintiff did the legal research, and showed Azoogle it was not Plaintiff's obligation pay duplication costs, and invited Azoogle to open an account with a duplication service so that Plaintiff could leave the documents there for duplication. Azoogle ultimately did so, the documents copied and transferred to defense counsel. (Exhibit "B" to Declaration of Jason Singleton)

As another example, Azoogle requires that Plaintiff depose Defendant's employee witnesses, in New York City. However, Azoogle, at the same time, insists that Plaintiff produce its employee witnesses for deposition in San Francisco, some 250 miles from home.

Similarly, after the Court issued its order of February 5, 2007, (Doc.#166) requiring counsel to confer in person to draft the joint letter last before the Court, Mr. Burgoyne declined to travel to Eureka. Consequently, Plaintiff's counsel traveled to San Francisco on May 10, 2007. Upon meeting in person, Mr. Burgoyne then stated he only had set aside two hours to meet with Plaintiff's counsel that day. Plaintiff's counsel traveled all the way to San Francisco, only to be told the joint letter would not be completed then because Mr. Burgoyne could only meet for two hours. These are but just a few examples.

In that backdrop, Plaintiff's counsel did initially request that Azoogle reimburse the cost of canceling Mrs. White's deposition as a condition to Plaintiff duplicating the documents obtained via third party subpoena. However, Plaintiff *promptly* reconsidered and changed its position. (Exhibit "B" to Declaration of Jason Singleton)

**2.    The information held by Bluerockdove.com is highly likely to lead to relevant evidence.**

Azoogle is listed with Bluerockdove.com as "partners in spam" on Spamhaus's ROKSO list, during the period at issue in this case. (Declaration of Richard Grabowski, [Doc.220] page 3, lines 1-9)  This is a fairly good indication that Bluerockdove.com was an affiliate of Azoogle, and was generating spam complaints that linked Bluerockdove.com to Azoogle.

Bluerockdove.com's marketing web page boasts "*a success rate of up to 99 percent for email delivery*". (page three of Exhibit "A", attached to the Declaration of Richard Grabowski.) It is extremely difficult, if not impossible, for a bulk commercial emailer to get past spam filters, without violating the CAN SPAM Act. Were a bulk mailer to comply with CAN SPAM, mailing from known IP ranges, and with true header information, the various spam filters would be configured within hours to block such emails. It might be said, the only viable way to get bulk email past spam filters is to falsify sender information. Given that fact, one might wonder how Bluerockdove.com has a 99% email delivery success rate.

Canada has no law against spamming. It is not uncommon for spammers to send their spam from Canada, into the United States, to evade liability. Bluerockdove.com is based in Quebec, Canada, indeed not far from Azoogle's office in Ontario, Canada.

Defendant offers the conclusion that since Plaintiff has been unable to identify the spammers who sent the subject emails, that no information from Bluerockdove.com could help Plaintiff identify the subject spammers. Def's Opp. P 2, Line 23.

First, Plaintiff's Motion for Summary Judgment stated nothing more than Plaintiff has to date been unable to identify those responsible for sending the subject emails, and that such a project is frequently very difficult. That is not to say however, that Plaintiff is not endeavoring to identify who sent the subject emails. Suppose for example that one of the items Plaintiff

seeks from Bluerockdove, marketing information, is produced, a sample of a mortgage solicitation email.  Suppose that email is identical or nearly identical to the emails at issue in this lawsuit.  Further, Bluerockdove's click through tracking information tracks how many end users clicked on a link within an email sent by Bluerockdove (or their affiliates) and what landing page was getting the traffic from said clicks.  The main purpose of which is to determine who gets paid for generating such click through traffic.  It may be, as it has in other cases, one can look at the link in the subject emails and identify, via Bluerockdove's link tracking codes, who sent the subject emails.  It might also be shown, from the materials requested, that emails were sent on Azoogle's behalf by Bluerockdove, without Bluerockdove ever having been provided Azoogle's suppression list.  It might be shown that Bluerockdove sent emails on Azoogle's behalf, that complaints regarding spam were thereby generated, but that Azoogle did nothing regarding it.  (Items  2 "f", "g", "h" and "i", 3 "b", "c"  and "h" in the Declaration of Richard Grabowski in Support of Motion).  Finally, but not exclusively, the material requested might show that the contract between Azoogle and Bluerockdove, and Bluerockdove and its affiliates, contained no terms preventing violation of the CAN SPAM Act.

**3.     The subpoenas served by Plaintiff request relevant data, and have produced relevant data.**

Defendant argues Plaintiff is not entitled to Letters Rogatory on the grounds the subpoenas Plaintiff has sent have not yielded relevant data.   The truth is the subpoenas have generated relevant data, but that is not the question.  The question is whether the subpoenas *sought* relevant data, which they have.  Following is the text of relevant data sought with each subpoena:

> 1.  All emails, letters, correspondence, notes, memoranda and electronic data which references and or relates to, any SPAM complaint regarding or relating to Azoogle, Inc. Azoogleleads (Azoogle.com, Inc.) or yourself (responding party).  By SPAM, we mean any electronic email message that is unsolicited, violates the CAN-SPAM Act, or caused any person or entity to complain about such email message.  If actual complaint emails from consumers fall within this demand, the contact data from such consumers should be redacted.
>
> 2.  All emails, letters, correspondence, notes, memoranda and

...

    electronic data exchanged between your SPAM abuse desk or similar department, and Azoogle, Inc. Azoogleleads (Azoogle.com, Inc.)

    3. All emails, letters, correspondence, notes, memoranda and electronic data exchanged between and Azoogle, Inc's. (Azoogle.com, Inc's.) SPAM abuse desk, or similar department and you, (responding party).

    4. All contracts between yourself (Responding party) and Azoogle, Inc., Azoogleleads, (Azoogle.com, Inc.). This means particularly Affiliate, publisher and advertiser agreements.

    5. All emails, letters, correspondence, notes, memoranda and electronic data exchanged between yourself (Responding party) and SPAMHAUS, SpamCop, and DNS Stuff, that relates, refers and or mentions Azoogle.

Now it may be, for various reasons, the responding party does not have the data Plaintiff requested. Such was the case in several instances. Where that is true, it was neither improper for Plaintiff to request the information, nor a great burden for the responding party to so state.

The reality is, that in response to one of Plaintiff's subpoenas, Dotster generated 93 pages consisting of list of domain names registered by Azoogle. Those domain names were searched for in Plaintiff's database of spam, which resulted in 6944 spam emails being discovered which are linked to Azoogle.

Connexus Corporation, fka Vendare/Netblue, Inc., in response to Plaintiff's subpoena, responded with information showing that Azoogle was an email affiliate of Netblue, and that Netblue terminated Azoogle's affiliate contract with Netblue as a result of spam violations. In fact, the Netblue documents state that "*Azoogle is on our burned list*".

In fact, Plaintiff is still waiting to receive documents in response to four of the subpoenas issued to date, consequently, one cannot yet determine what relevant data will be revealed.

In sum, Defendant's argument that since, in its view, no relevant data has been obtained by subpoena, Plaintiff should be precluded from conducting third party discovery, is without merit.

**4. Miscellaneous housekeeping issues.**

Azoogle has filed a Motion for Rule 11 sanctions. The same day it was filed, the Court

advised counsel during the hearing on motions for summary adjudication, that the Court would not be hearing Rule 11 motions until after a ruling on any final motion for summary judgment. Plaintiff's counsel inquired of Azoogle's counsel if they would be taking the sanctions motion off calendar, in light of the Court's advise. Defense counsel has not responded, nor taken the sanctions motion off calendar. Plaintiff would like to know whether it will be necessary to file an Opposition, or whether the Court will be resetting Azoogle's Rule 11 Motion to a later date.

As of the date of this writing, June 8th, Azoogle's counsel has not proposed any date for deposition of any of the three deponents the Court indicated (at the hearing of June 1st) should be set. Plaintiff would like to schedule these depositions at the first opportunity.

## CONCLUSION

Spammers steal computer user identities. Spammers use domain name registration companies, to hide the true owner of IP ranges from which emails are sent. The procurers of spam use contractors to send the spam, to distance themselves from the illegal conduct.

It is cost effective to go to these great lengths, as spamming is extremely lucrative. Azoogle's earnings from bulk commercial email were disclosed during the deposition of Don Mathis, however, Defendant has designated it confidential, and the transcript not yet prepared. Plaintiff is thus unable presently to disclose to the Court what Azoogle earns via bulk commercial email.

Approximately 80% of all email traffic on the internet is spam. The entire internet email system would cease to function, except for the operation of spam filters. The Northern District's electronic filing system could not function without a viable internet email system, and hence its success is attributable, in large part, to the operation of spam filters.

Given the inherent challenge of tracking back and showing the actions of spammers in the frequently anonymous world of the internet, Internet Access Providers prosecuting CAN SPAM cases should be allowed, (if they are to be successful) full use of the discovery tools provided by the **FRCP**. Plaintiff's motion for issuance of Letters Rogatory is justified by the connection shown between Azoogle and Bluerockdove, and the inherent nature of the spam industry. In sum, Azoogle has simply failed to establish good cause not to issue Letters

1 | Rogatory.  *In re Bankers Trust Company v Bethlehem Steel Corporation*, 752 F.2d 874, 890 (3rd Cir., 1984)

**SINGLETON LAW GROUP**

Dated:   June 8, 2007       /s/ Jason K. Singleton
Jason K. Singleton,
Richard E. Grabowski, Attorneys for Plaintiff,
**ASIS INTERNET SERVICES**