# Exhibit A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIS INTERNET SERVICES,<br><br>Plaintiff,<br><br>v.<br><br>MEMBER SOURCE MEDIA, LLC,<br><br>Defendant.<br>_____/ | No. C-08-1321 EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SECURITY FOR COSTS; AND SETTING CASE MANAGEMENT SCHEDULE**<br><br>**(Docket No. 7)** |

Both the CAN-SPAM (Controlling the Assault of Non-Solicited Pornography and Marketing) Act of 2003 and California Business and Professions Code § 17259 restrict the use of unsolicited commercial email. Plaintiff ASIS Internet Services has filed suit against Defendant Member Source Media, LLC, asserting claims pursuant to both statutes. Currently pending is Member Source's motion for security for costs, including attorney's fees. Member Source asks that the Court order ASIS to post security in the amount of $200,000. Having considered the parties' briefs and accompanying submissions, the oral argument of counsel, and all other evidence of record, the Court hereby **GRANTS** Member Source's motion for security. However, the Court shall require ASIS to post security in the amount of $7,500 only, for the reasons discussed below.

## I. FACTUAL & PROCEDURAL BACKGROUND

A. Parties

In its complaint, ASIS alleges that it is a California corporation that provides Internet access. *See* Compl. at 1.

In support of its motion for security, Member Source has submitted evidence that it "is an Internet marketing company, which assists clients such as Blockbuster, Discover Card, and Columbia House in the online promotion of their goods and services." Sommer Decl. ¶ 2.

B.  Complaint

In its complaint, ASIS alleges that, from March 2006 through January 2008, Member Source sent or caused the sending of 5,006 commercial email messages to ASIS servers which contained (1) header information that was materially false or misleading and (2) a subject line that was deceptive. *See* Compl. ¶¶ 9, 11. The 5,006 emails that were sent were not solicited because they were sent to unassigned or inactive email accounts owned by ASIS. *See id.* ¶ 12.

ASIS also alleges in its complaint that Member Source (1) "used a harvest and directory [sic] attack" to acquire the email accounts to send the 5,006 emails and (2) "used an automated creation of multiple email accounts" to send the 5,006 emails. *Id.* ¶¶ 15-16.

According to ASIS, in doing the above, Member Source violated both the CAN-SPAM Act, *see* 15 U.S.C. §§ 7704(a)(1)-(2), (b)(1)-(2), as well as California law. *See* Cal. Bus. & Prof. Code § 17529.5.

C.  Other Litigation Filed by ASIS

In addition to this case, ASIS has filed seven other lawsuits in this District, also alleging violations of the CAN-SPAM Act and/or California Business & Professions Code § 17529.5. Those cases are as follows:

(1) *ASIS Internet Servs. v. Optin Global, Inc.*, No. C-05-5124 JCS (filed on 12/12/2005).

(2) *ASIS Internet Servs. v. Valueclick, Inc.*, No. C-07-3261 PJH (filed on 6/21/2007).

(3) *ASIS Internet Servs. v. Azoogle.com, Inc.*, No. C-07-4630 JCS (filed on 9/7/2007).[1]

(4) *ASIS Internet Servs. v. Imarketing Consultants, Inc.*, No. C-07-5357 CW (filed on 10/19/2007).

(5) *ASIS Internet Servs. v. All In, LLC*, No. C-07-5717 JSW (filed on 11/9/2007).

---

[1] This case was recently reassigned from Judge Patel to Judge Spero. *See* Docket No. 32 (No. C-07-4630 JCS).

2

(6) *ASIS Internet Servs. v. Active Response Group, Inc.*, No. C-07-6211 TEH (filed on 12/07/2007).

(7) *ASIS Internet Servs. v. Pure Ads, LLC*, No. C-08-1566 SC (filed on 3/21/2008).

A motion for security was filed by one of the defendants in the first case (*i.e.*, No. C-05-5124 JCS) while Judge Wilken was still the presiding judge. Judge Wilken denied the motion for security because (1) the defendant was not likely to succeed on the merits and because (2) "this is a new area of law in which the scope of liability is not clear" and "requiring Plaintiff to post a security bond at this juncture could chill private enforcement of anti-spam laws." *ASIS Internet Servs. v. Optin Global, Inc.*, No. C-05-5124 JCS (Docket No. 72) (Order at 17, filed on 6/30/2006).

Out of the seven cases above, there has been a ruling on the merits in only one, that is, the first case (*i.e.*, No. C-05-5124 JCS). In that case, Judge Spero granted the defendant's motion for summary judgment and denied ASIS's, concluding that ASIS lacked standing to pursue its case. The defendant has filed a bill of costs in the action (approximately $38,000), *see id.* (Docket No. 409), and has also filed a motion for sanctions, including attorney's fees (approximately $912,000). *See id.* (Docket Nos. 411, 416).

## II. DEFENDANT'S MOTION FOR SECURITY

A. Authority for Requiring the Posting of Security

In its motion, Member Source asks that the Court order ASIS to post security in the amount of $200,000 to cover any costs, including attorney's fees, that may be assessed in the future. ASIS does not challenge Member Source's assertion that this Court has the authority to require security pursuant to:

(1) the CAN-SPAM Act, *see* 15 U.S.C. § 7706(g)(4) (stating that, if a provider of Internet access service brings a civil action, then "the court may, in its discretion, require an undertaking for the payment of the costs of such action, and assess reasonable costs, including reasonable attorney's fees, against any party");

(2) the Civil Local Rules, *see* Civ. L.R. 65.1-1 (stating that, "where authorized by law and for good cause shown, the Court may require any party to furnish security for costs which can be awarded against such party"); and

3

(3) the Court's inherent powers. *See In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1121 (9th Cir. 1987) (stating that "[f]ederal courts have inherent authority to require plaintiffs to post security for costs"); *see also Simulnet E. Assocs. v. Ramada Hotel Operating Co.*, 37 F.3d 573, 574 (9th Cir. 1994) (same); *Ehm v. Amtrak Bd. of Directors*, 780 F.2d 516, 517 (5th Cir. 1986) (stating that "[s]ecurity for costs is not covered by Rule 54(d)" and "is a proper subject for regulation by local rules"; adding that, in the absence of a local rule, "a district court has inherent power to require security for costs when warranted by the circumstances of the case").

Security for fees (as opposed to costs) is authorized only pursuant to the CAN-SPAM Act.

Furthermore, the parties agree that, whether pursuant to the CAN-SPAM Act, the Civil Local Rules, and/or the Court's inherent powers, the relevant factors for the Court to consider in determining whether to require security include as follows:

(1) the financial condition and ability to pay of the plaintiff;

(2) whether the plaintiff is a nonresident or foreign corporation and whether there is attachable property of the plaintiff within the district;

(3) the merits of the plaintiff's underlying claims;

(4) the background and purpose of the plaintiff's suit;

(5) the legal costs expected to be incurred by the defendant (*e.g.*, whether substantial costs may be incurred by the defendant in preparation for trial) and the extent and scope of discovery;

(6) the reasonable extent of the security to be posted, if any, viewed from the defendant's perspective and from the plaintiff's perspective; and

(7) the plaintiff's compliance with past court orders.

*See also Simulnet*, 37 F.3d at 576; *Sea Trade Co. Ltd. v. FleetBoston Fin. Corp.*, No. 03 Civ. 10254 (JFK), 2008 U.S. Dist. LEXIS 3227, at *4 (S.D.N.Y. Jan. 15, 2008); *Jones v. Haga*, No. 05-cv-02268-PSF-CBS, 2006 U.S. Dist. LEXIS 19870, at *7 (D. Colo. Apr. 13, 2006); *Internet Billions Domains, Inc. v. Venetian Casino Resort, LLC*, No. 01-5417, 2002 U.S. Dist. LEXIS 11805, at *10 (E.D. Pa. May 31, 2002).

Some courts have held that a plaintiff's inability to pay is sufficient in and of itself to require the posting of a bond. *See Sea Trade*, 2008 U.S. Dist. LEXIS 3227, at *6-7. On the other hand, the Ninth Circuit has cautioned that, "[i]n requiring a security bond for defendants' costs, care must be taken not to deprive a plaintiff of access to the federal courts. To do so has serious constitutional implications. Our statutes and case law make it evident that we studiously avoid limitation of access to the courts because of a party's impecunious circumstance." *Simulnet*, 37 F.3d at 575-76.

B.  Application of Factors

    1.  Plaintiff's Financial Condition and Ability to Pay

Member Source asserts that it has serious concerns about ASIS's financial condition and ability to pay based on conversations that its counsel had with ASIS's counsel during the Judge Spero case. According to counsel for Member Source, during the Judge Spero case, "counsel for ASIS stated to [him], *on multiple occasions*, most recently during an April 10, 2008 telephone call, that should ASIS be forced to pay costs and/or attorneys' fees in [the Judge Spero] case ASIS would declare bankruptcy." Burgoyne Decl. ¶ 14 (emphasis in original).

In its opposition, ASIS claims that the above statement by counsel for Member Source is inaccurate, *see* Opp'n at 2, but there is no evidence to support ASIS's claim. Notably, nowhere in his declaration does ASIS's counsel state such. ASIS also argues that the Court should not consider the statement by counsel for Member Source because the conversations between counsel were made during the course of settlement discussions. *See* Singleton Decl. ¶ 4; Opp'n at 2 (citing Federal Rule of Evidence 408). But Rule 408 is not applicable here. Under the rule, statements made during a settlement negotiation are not admissible "to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount." Fed. R. Evid. 408(a). They are, however, admissible if offered for purposes other than these. *See* Fed. R. Evid. 408(b). Here, Member Source is not using the evidence of ASIS's inability to pay as evidence of the invalidity of ASIS's CAN-SPAM and related state law claims, and therefore the evidence may be considered. And even if this evidence could not be considered, the Court could still take into account ASIS's representation (albeit made without any supporting evidence) that it is not financially able to post a bond in the amount of $200,000. Opp'n at 2.

5

In light of the declaration submitted by Member Source's counsel as well as ASIS's representation that it is not financially able to post a bond in the amount of $200,000, the Court finds that this factor weighs in favor of Member Source. The Court gives no weight to ASIS's claim that it has gross yearly revenues in the hundreds of thousands of dollars, *see* Opp'n at 2 -- (1) because ASIS provides no evidence to back up this claim and (2) because the claim is undercut by ASIS's statement (again, made without any supporting evidence) that its yearly profits are "pedestrian." Opp'n at 2.

### 2. Whether Plaintiff is Nonresident or Foreign Corporation; and Whether There is Attachable Property of Plaintiff Within District

This factor weighs against Member Source since ASIS is a California corporation. Since ASIS is a California corporation, presumably, it has attachable property within the District, which also makes this factor weigh against Member Source.

### 3. Merits of Plaintiff's Underlying Claims

Under the CAN-SPAM Act, a provider of Internet access service "adversely affected" by a violation of 15 U.S.C. § 7704(a)(1) or (b), *or* a pattern or practice that violates § 7704(a)(2), may bring a civil action in federal court. 15 U.S.C. § 7706(g)(1).

In its complaint, ASIS asserts that Member Source violated the CAN-SPAM Act in four ways:

(1) by sending or causing the sending of 5,006 commercial emails to ASIS's servers containing header information that was materially false or misleading, a violation of 15 U.S.C. § 7704(a)(1);

(2) by sending or causing the sending of 5,006 commercial emails to ASIS's servers containing misleading subject liens, a violation of § 7704(a)(2);

(3) by using a harvest and dictionary attack to acquire the email accounts to send the 5,006 commercial emails, a violation of § 7704(b)(1); and

(4) by using an automated creation of multiple email accounts to send the 5,006 commercial emails, a violation of § 7704(b)(2).

ASIS alleges in the complaint that it has "suffered adverse affect [sic] from the sending and receipt of [Member Source's] emails," Compl. ¶ 10, but does not specify what those adverse effects are.

Member Source argues that the merits of ASIS's case is weak, largely on the basis that, in one of the other cases filed by ASIS, Judge Spero concluded that ASIS lacked standing to assert its CAN-SPAM claim because "no reasonable jury could find, based on the undisputed evidence, that the Emails that are the subject of this action caused any *significant* adverse effect to ASIS." JCS Order at 26 (emphasis in original). Member Source contends that, consistent with Judge Spero's ruling, for ASIS to have standing in this case, it must show adverse effects *specifically related* to the emails that were sent by, or caused to be sent by, Member Source; furthermore, those adverse effects must be *significant*. *See also Brosnan v. Alki Mortgage, LLC*, No. C 07 4339 JL, 2008 U.S. Dist. LEXIS 14739, at *7 (N.D. Cal. Feb. 13, 2008) (stating that, "[t]o establish adverse effects the plaintiff must show significant adverse harm" and that "[t]he harm enumerated by Congress goes well beyond the inconvenience of having to deal with an inbox full of spam"); *Gordon v. Virtumundo, Inc.*, No. 06-0204-JCC, 2007 U.S. Dist. LEXIS 35544, at *22-23, 26-27 (W.D. Wash. May 15, 2007) (same).

Based on the record before it, the Court does not have sufficient information to assess ASIS's standing. As ASIS points out, even if the Court were to agree with Judge Spero's legal interpretation with respect to adverse effects, the case here involves different facts, being based on different transactions with a different defendant. *See* Opp'n at 4. As indicated at the hearing, the Court will bifurcate the issue and resolve standing on summary judgment.

This factor, therefore, does not weigh in favor of Member Source. But neither does it weigh in favor of ASIS, given the legal interpretation that has been rendered by other federal judges.

4.  <u>Background and Purpose of Plaintiff's Suit</u>

This factor weighs strongly in favor of Member Source. The Court acknowledges that Congress has authorized antispam lawsuits that make possible large statutory damages awards. But it is evident the ASIS's litigation is brought primarily for the purpose of profiting from litigation and not protecting its underlying business. For instance, at the hearing, ASIS admitted that one of the reasons why it turned off its spam filter for its inactive email accounts was to ensure that it could

collect a sufficient number of spam emails to support the filing of its antispam lawsuits. The only other reason provided by ASIS as to why it turned off its spam filter was that it needed to collect some spam emails in order to configure or better configure its spam filter. ASIS did not explain why it could not do periodic sampling (*i.e.*, turn off its spam filter for only limited periods of time rather than all the time), nor did it explain why it could not do sampling based on a limited number of inactive accounts (rather than all 1,400 or 1,500 inactive accounts).

### 5. Legal Costs Expected to be Incurred by Defendant and Extent and Scope of Discovery

This factor weighs in favor of Member Source more than ASIS. It is likely that this case will involve fairly extensive third-party discovery, a fact that ASIS does not really dispute. *See* Opp'n at 10 (stating that "the primary issues for discovery by Plaintiff regard: 1) who was the actual sender of the [5,006] emails, if it was not [Member Source]; and 2) if [Member Source] was not the sender, did they hire or induce the sending of the emails with knowledge or consciously avoid knowing the sender would violate the CAN SPAM Act"). Notably, at the hearing, ASIS asked for permission to issue as many as twenty third-party subpoenas, even though it understood that the Court was limiting discovery to, in essence, the issue of standing, which the Court was bifurcating from the case on its merits in order to allow an early summary judgment motion on standing. *See* Part III, *infra*.

### 6. Reasonable Extent of Security to be Posted

This factor weighs in favor of ASIS. Member Source is asking for security in the amount of $200,000 to be posted. This is an excessive sum, taking into account that the Court is bifurcating the standing issue for early resolution. Moreover, the sum seems excessive given that only limited costs are covered by 28 U.S.C. § 1920. *See Jones*, 2006 U.S. Dist. LEXIS 19870, at *7-8 (denying request for security because court could not reach conclusions about merits of the plaintiff's claims in advance of ruling on pending motions to dismiss, the defendants failed to present evidence to support their claim that the plaintiff was unable to pay costs assessed, and the defendants did not establish that a bond in the amount of $50,000 was justified since what could qualify as statutory costs was limited by 28 U.S.C. § 1920).

Member Source points out that the $200,000 is needed to cover not only costs but also attorney's fees. However, the likelihood of Member Source being awarded a fee is questionable. First, as ASIS points out, if Member Source prevails on the argument that ASIS has no standing to bring the suit, then this Court arguably would have no jurisdiction under the CAN-SPAM Act to award fees. *Cf. Branson v. Nott*, 62 F.3d 287, 292-93 (9th Cir. 1995) ("[B]ecause the district court lacked subject matter jurisdiction over Branson's purported civil rights claim in the first instance, it also lacked the power to award attorney's fees under the civil rights attorney fee statute."); *Knight v. Knight*, 207 F.3d 1115, 1117 (9th Cir. 2000) (concluding that, if a court lacks subject matter jurisdiction over an ERISA claim, then it cannot award attorney's fees under the ERISA fee provision; noting that fee-shifting provisions cannot confer subject matter jurisdiction that is otherwise absent).

Member Source argues that "ASIS's position rests on an obvious conflation of constitutional standing and statutory standing" and that "[t]he Ninth Circuit has expressly ruled that where a plaintiff has been found to lack statutory standing, the court nevertheless retains jurisdiction to award costs and fees." Reply at 3 (citing *Credit Managers Ass'n of S. Cal. v. Kennesaw Life & Accident Ins. Co.*, 25 F.3d 743 (9th Cir. 1994)). But two of the cases cited by ASIS (*Branson* and *Knight*) have nothing to do with constitutional standing; they simply reflect the principle that, if a court lacks subject matter jurisdiction over a statutory claim, then attorney's fees cannot be awarded pursuant to that statute. Moreover, ASIS's characterization of *Credit Managers* is not entirely correct.

*Credit Managers* involved an ERISA claim. While the Ninth Circuit did award fees to the prevailing defendant even though the plaintiff failed to establish that it standing to pursue an ERISA claim, the court did so largely as a matter of equity because of the specific circumstances involved:

> Pursuant to 29 U.S.C. § 1132(g)(1), courts have discretion to award reasonable attorney's fees to either party in any action by an ERISA-plan participant, beneficiary, or fiduciary. In *CMA I*, this court held that CMA had standing to bring an ERISA claim because the evidence in the record demonstrated that CMA 'could be' an ERISA fiduciary. . . . At trial, however, CMA failed to prove that any of the employers who subscribed to COMPETE had created an ERISA plan. Therefore, CMA argues that, because it failed to satisfy its

9

> burden of proving that an ERISA plan existed, it could not have been an ERISA fiduciary.
>
> We reject this argument. During the eight years of litigation prior to this appeal, CMA has purported to be a fiduciary to various ERISA plans and has asserted to pursue this case on behalf of the participants of those plans. We agree with Kennesaw that it would be unjust to permit CMA to insulate itself from liability for attorney's fees simply because it failed to produce sufficient evidence to prevail on its claims. Indeed, the fact that CMA pursued for so long a claim that lacked any evidentiary basis weighs in favor of awarding fees to Kennesaw. Accordingly, because CMA colorably maintained that it was a fiduciary of a plan throughout the proceedings below, in a manner sufficient to withstand summary judgment, we conclude that the district court had authority to award attorney's fees under section 1132(g)(1) notwithstanding CMA's ultimate failure to prove its claims.

*Id.* at 747. Member Source might be able to obtain fees under CAN-SPAM if this case unfolded like *Credit Managers* -- *e.g.*, prolonged litigation in which ASIS withstood a summary judgment challenge that it lacked standing. However, at this juncture, it is not clear that the case will necessarily unfold like *Credit Managers*, and thus the equitable basis that existed in *Credit Managers* may not obtain here.

Second, attorney's fees under the CAN-SPAM Act are discretionary, not mandatory. *See* 15 U.S.C. § 7706(g)(4) ("[T]he court may, in its discretion, require an undertaking for the payment of the costs of such action, and assess reasonable costs, including reasonable attorneys' fees, against any party."). Furthermore, even under the "evenhanded approach" to attorney's fees (*i.e.*, instead of the dual standard typically applied in civil rights cases and articulated in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978)), *see Gordon v. Virtumundo, Inc.*, No. 06-0204-JCC, 2007 U.S. Dist. LEXIS 55941, at *14 (W.D. Wash. Aug. 1, 2007) (applying the evenhanded approach to a CAN-SPAM action), a losing plaintiff would likely be assessed fees and costs only if the original suit was frivolous or objectively unreasonable or brought in bad faith. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994) (stating that these factors, as well as the need in particular circumstances to advance considerations of compensation and deterrence, may be used to guide a court's discretion in deciding whether to award fees under the Copyright Act, "so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner"). In the instant case, while there are issues with respect to

10

ASIS's motive in bringing the lawsuit, the case is not clearly frivolous or objectively reasonable. Even the standing issue is not easily resolved, as indicated above.

This is not to say that it will be impossible for Member Source to be awarded fees if it is ultimately the prevailing party in this action; nor is the Court making any prejudgment about whether fees are appropriate should Member Source prevail. The Court is simply noting that, at this juncture, Member Source's claim to fees is highly uncertain.

       7.     Plaintiff's Compliance with Past Court Orders

This factor is not applicable in the instant case.

C.    Summary

The above factors reflect that Member Source has legitimate concerns behind its request for security based on, *e.g.*, ASIS's financial ability to pay, the extent and scope of expected discovery, and ASIS's motivation in bringing this litigation. On the other hand, it is not clear that ASIS's suit is without merit, as Member Source contends. Furthermore, the amount of security requested by Member Source is excessive, particularly because the Court is bifurcating the standing issue and Member Source may not be entitled to attorney's fees (as opposed to taxable costs).

Taking into account all of the above, the Court concludes that Member Source's request for security is justified. However, the Court will not require a bond of $200,000, as Member Source has requested. Requiring a bond in this amount is not warranted for the reasons discussed above. Moreover, requiring a bond in this amount would effectively preclude ASIS from proceeding with this case, something that the Court is loathe to do since the Ninth Circuit has cautioned that "care must be taken not to deprive a plaintiff of access to the federal courts." *Simulnet*, 37 F.3d at 575-76.

The Court concludes that security in the amount of $7,500 is appropriate. This amount is likely to cover any taxable costs that Member Source would incur should the standing issue be resolved in its favor. Should ASIS prevail on the summary judgment motion on standing, then Member Source may ask the Court to revisit the issue of whether a bond in a greater amount should be posted.

11

### III. CASE MANAGEMENT SCHEDULE

At the hearing, the parties agreed that, to conserve resources, the Court should bifurcate the standing issue and allow an early summary judgment motion on that issue before dealing with the case on its merits.

The summary judgment motion on standing shall be heard on **October 15, 2008, at 10:30 a.m.** The opening brief shall be filed by September 10, 2008; the opposition brief by September 24, 2008; and the reply brief by October 1, 2008.

Prior to the hearing on the summary judgment motion, all discovery shall be stayed, with the following limited exceptions. First, the Court shall allow limited, reasonable discovery specifically targeted to the issue of standing. Second, the Court shall allow ASIS to issue five subpoenas to third parties the sole purpose of allowing ASIS to determine who the owner of a domain name is. The parties may meet and confer to determine whether other limited, reasonable discovery is appropriate, keeping in mind that the Court wishes to keep costs at a minimum so that the threshold issue of standing may be resolved first.

Finally, the Court orders the parties to meet and confer to discuss whether it may be appropriate to stay this case until after the Ninth Circuit rules on ASIS's appeal in the *Optin Global* case (No. C-05-5124 JCS) and clarifies what the standing requirements are for an action brought pursuant to the CAN-SPAM Act. The parties should report back to the Court by joint letter on the stay issue by July 17, 2008.

This order disposes of Docket No. 7.

IT IS SO ORDERED.

Dated: July 2, 2007

EDWARD M. CHEN
United States Magistrate Judge

12

# Exhibit B

# In the United States District Court
# for the Northern District of California
# Magistrate Judge Edward M. Chen

## CIVIL MINUTES

E-FILING

**Date:** January 27, 2010

**Case No:** C08-1321 EMC **Time:** 1:37-1:49

**Case Name:** ASIS Internet v. Member Source **Reporter:** Sarah Goekler (530)941-2621

    **Attorneys:** Jason Singleton for Plaintiff
                     Henry Burgoyne for Defendant

    **Deputy Clerk:** Betty Lee


**PROCEEDINGS:**

-FURTHER CMC


**ORDERED AFTER HEARING:**

Defendant's oral motion to dismiss the CAN-SPAM claim is granted. Cross briefs re state claim shall be filed by 2/10/10. Court will thereafter rule on papers or notify counsel if a hearing is necessary.


**Order to be prepared by:** [ ] Plntf  [ ] Deft  [ x ]  Court

**Case continued to:**

**cc: EMC**