Jason K. Singleton, State Bar #166170
jason@singletonlawgroup.com
Richard E. Grabowski, State Bar #236207
rgrabowski@mckinleyville.net
SINGLETON LAW GROUP
611 "L" Street, Suite A
Eureka, CA 95501
(707) 441-1177
FAX  441-1533

Attorneys for Plaintiff, ASIS Internet Services

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIS INTERNET SERVICES, a California corporation,<br><br>　　　Plaintiff,<br><br>vs.<br><br>OPTIN GLOBAL, INC., a Delaware Corporation, also dba Vision Media Limited Corp., USA Lenders Network, USA Lenders, and USA Debt Consolidation Service; et al.,<br><br>　　　Defendants. | Case No.  C-05-5124 JCS<br><br>**OPPOSITION TO DEFENDANT AZOOGLE'S MOTION FOR RULE 11 SANCTIONS**<br><br>DATE:  April 30, 2010<br>TIME:  9:30 a.m.<br>CTRM: A, 15th Floor |

## TABLE OF CONTENTS

INTRODUCTION   .......... ......... .......... .......... ..................... .......... .......... ......... .......... ........1

ARGUMENT   .......... ......... .......... .......... ..................... .......... .......... ......... .......... ........2

A.    Plaintiff is not a professional actor filing suit for improper purposes, and the emails in this action are illegal violations of the *CAN SPAM Act of 2003* and the *California Business & Professions Code* §17529.5. .......... .......... ......... .......... ........2

B.    Defendant's attempt to relate ASIS to *Gordon* is without merit.  The *Gordon* court found that the Plaintiff was not an IAS and therefore could not have standing under the *CAN SPAM Act of 2003*. ...... ..................... .......... .......... ......... .......... ........5

C.    Defendant has failed to provide any basis for sanctions under *FRCP* Rule 11 and there is no purpose in awarding sanctions under Rule 11 .......... ......... .......... ........6

CONCLUSION    .......... ......... .......... .......... ..................... .......... .......... ......... .......... ..........

## TABLE OF AUTHORITIES

**Cases**

*ASIS Internet Services v. Active Response Group*, Not Reported in F.Supp.2d, 2008 WL 2952809 (N.D.Cal., 2008) ..................................................................7

*Asis Internet Services v. Consumerbargaingiveaways, LLC*, Slip Copy, 2009 WL 1035538 (N.D.Cal. 2009) ....................................................................................4

*Asis Internet Services v. Imarketing Consultants, Inc.*, Slip Copy, 2008 WL 2095498 (N.D.Cal. 2008) ............................................................................................3

*ASIS Internet Services v. Optin Global, Inc.*, Not Reported in F.Supp.2d, 2008 WL 1902217, *15 (N.D.Cal. 2008). .....................................................................7

*Asis Internet Services v. Subscriberbase Inc.*, Slip Copy, 2009 WL 4723338 (N.D.Cal. 2009) ...................................................................................................4

Asis Internet Services v. Vistaprint USA, Inc., --- F.Supp.2d ----, 2009 WL 1258351 (N.D.Cal.2009) ...................................................................................................4

*ASIS v ALL IN, LLC*, Case No. CV-07-5717 JSW, Docket 22 (Northern Dist. Cal. October 20, 2008) ...................................................................................................3

*ASIS v Find A Quote*, Case No. C-08-3186 EDL, Dockets 25 and 31 (Northern Dist. Cal. March 12, 2009 and March 23, 2009) .........................................................3

*ASIS v. Imarketing Consultants, Inc.*, Case No. C-07-5357 CW, Docket 20 (N.D.Cal. 2008) ...................................................................................................3

*ASIS v. Pure Ads, LLC*, Case No. C 08-1566 SC, Docket 10 (N.D.Cal. 2008) .........................3

*ASIS v. Sierra Partners, LLC*, Case No. C 08-2813 SBA Docket 4 (N.D.Cal. 2008) .............3

*ASIS v. ValueClick, Inc.*, Case No. C 07-3261 PJH, Docket 22 (N.D.Cal. 2008) ...................3

*Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) ...........................................7

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978) ...........................................1

*F.T.C. v. Optin Global, Inc.*, Not Reported in F.Supp.2d, 2005 WL 1027108 (N.D.Cal.2005) ...................................................................................................5

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ...........................................................1

*Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009) ................................5, 6, 7

*Molski v. Evergreen Dynasty Corp.*, 521 F.3d 1215, 1216–1217 (9th Cir. 2008) ...............3

*Moy v. U.S.*, 906 F.2d 467, 470 (9th Cir. 1990) ...........................................................2

*Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ...........................6

*Phillips v. Netblue, Inc.*, Case No. C-05-4401 SC, Dockets 199 and 201 (March, 2007) ......3

*Phillips v. Netblue, Inc.*, Not Reported in F.Supp.2d, 2006 WL 3647116 (N.D.Cal. 2006)....3

*Phillips v. Netblue, Inc.*, Not Reported in F.Supp.2d, 2007 WL 528722 (N.D.Cal. 2007)......3

**Statutes**

15 *USC* §7704 ...................................................................................................4

*California Business and Professions Code* §17529.5 ..........................................2, 3, 4

*CAN SPAM Act of 2003* ................................................................................ passim

**Rules**

*FRCP* Rule 11 ...........................................................................................2, 7, 8

*FRCP* Rule 11(b) ...........................................................................................4

**INTRODUCTION**

Plaintiff herein responds and presents its to Defendant Azoogle's Motion for Rule 11 Sanctions.  Plaintiff originally filed its opposition to Defendant's original motion in Docket 257 and again in Docket 434 and relies on those Opposition papers here.  It should also be noted that Plaintiff paid the costs in this case, of $34,000, over a year ago.   Defendant has now filed three motions for sanctions.  The question has to asked, how many bites of the apple does Defendant get in this case?  The litigious nature of Defendant's law firm has created most of the costs in this case, and the court should consider if this is nothing more than a strategy by a law firm bent on increasing legal fees for both Plaintiff and its own client?

Plaintiff objects to references in the Declaration of Jeffrey Rosenfeld referenced as Exhibits A and B.  The **Member Source** Order was issued on July 2, 2008.  This Court specifically provided that no new evidence could be submitted, and "may only address cases decided by any court after August 22, 2008."  Docket 439, P1, L22.  As the Order in the **Member Source** case is prior to that date, it is improperly submitted.  Further the Order after Hearing, Exhibit B to the Declaration, provides nothing regarding "the impact on the sanctions question of any Court of Appeal decision made in the appeal in this case."  Docket 439.  It therefore is also improper.

In its Notice, Defendant, Azoogleads.com "Azoogle," asserts that the 9th Circuit has affirmed the District Court's ruling concerning the even-handed approach to applying attorney fees.  Nothing could be farther from the truth.  The appellate court ruled:

> We review for abuse of discretion an award of costs. Dawson v. City of Seattle, 435 F.3d 1054, 1070 (9th Cir. 2006) (citing Miles v. California, 320 F.3d 986, 988 (9th Cir. 2003)). Irrespective of whether the district court awarded costs under Federal Rule of Civil Procedure 54(d)(1) or 15 U.S.C. § 7706(g)(4), we find no abuse of discretion in the award. Accordingly, the order is affirmed.  See Docket 466, P2.

There is no indication in this ruling that the appellate court approved of the **Fogarty** even-handed approach over the **Christianburg** dual standard.  **Fogerty v. Fantasy, Inc.**, 510 U.S. 517 (1994); **Christiansburg Garment Co. v. EEOC**, 434 U.S. 412 (1978).  The appellate

court simply agreed that the District Court had not abused its discretion.  Without further guidance from the appellate court as to its ruling, nothing in that ruling can be applied to the issue of sanctions where the standard is significantly different than the simple award of costs.

Further, Defendant refers to its attorney fees in this matter as though they were entirely caused by Plaintiff, and chose to ignore the outrageous litigation tactics used by Defendant's attorney.  Defendant refused to produce witnesses in a timely manner that led to discovery motions by both parties, at one point setting up and canceling the deposition of Jen Evans five times.  Defendant failed to produce its expert witness in a timely manner which excluded Plaintiff from ever taking the testimony of that witness, then complained about the fact that Plaintiff timely produced its witness and an extensive expert report.  Defendant's attorneys used every procedural trick in the book to delay litigation and increase costs for everyone including their own clients.  If they had firmly believed that Plaintiff lacked standing, then that motion could have been brought and resolved in either of the two initial motions to dismiss or any of the various motions that followed.  It is notable that the standing defense was not considered until the case was almost two years old.

Further, Defendant's motion is very confused.  It is unclear if Defendant is asking for an award under the statute, or an award as sanctions.  Because the motion is titled Motion for Sanctions, Plaintiff assumes that this motion is brought under *FRCP* Rule 11 and will respond on that basis.

## ARGUMENT

**A.    Plaintiff is not a professional actor filing suit for improper purposes, and the emails in this action are illegal violations of the *CAN SPAM Act of 200*3 and the California Business & Professions Code §17529.5.**

In response to Defendant's blatant attack on Plaintiff and Plaintiff's attorney, Plaintiff must respond.  Defendant has provided no evidence that any of the lawsuits referred to were in any way uncalled for or not based on legitimate violations of either the *CAN SPAM Act of 2003* or the *California Business and Professions Code* §17529.5 ("*B&P Code* §17529.5").

This attack revolves around both First Amendment and due process rights.  A ruling that is based merely on whether or not a plaintiff has brought several lawsuits without reviewing the

merits of those lawsuits tends to violate a plaintiff's right to due process.   In cases where an injunction was sought, the courts have uniformly insisted that a review of the merits of the cases must be conducted to restrict access to the courts.  *Moy v. U.S.*, 906 F.2d 467, 470 (9th Cir. 1990).

The clear implication from the 9th Circuit regarding making any decision just by looking at the number of cases a plaintiff has brought is inappropriate and improper.  See *Molski v. Evergreen Dynasty Corp.*, 521 F.3d 1215, 1216–1217 (9th Cir. 2008).    Moreover, the number of suits is indicative only of the pervasive nature of the spam problem.

Plus the merits of the various cases indicate that Defendant is clearly wrong in its assertions.  Azoogle claims that ASIS has not succeeded in any of its suits against spammers.  Azoogle is clearly wrong in its assertions.

ASIS obtained money judgments and injunctions in: *ASIS v ALL IN, LLC*, Case No. CV-07-5717 JSW, Docket 22 (Northern Dist. Cal. October 20, 2008); and *ASIS v Find A Quote*, Case No. C-08-3186 EDL, Dockets 25 and 31 (Northern Dist. Cal. March 12, 2009 and March 23, 2009) (final judgment awaiting district court approval).

ASIS obtained confidential settlements in *ASIS v. Imarketing Consultants, Inc.*, Case No. C-07-5357 CW, Docket 20 (N.D.Cal. 2008); *ASIS v. Pure Ads, LLC*, Case No. C 08-1566 SC, Docket 10 (N.D.Cal. 2008); *ASIS v. Sierra Partners, LLC*, Case No. C 08-2813 SBA Docket 4 (N.D.Cal. 2008); and *ASIS v. ValueClick, Inc.*, Case No. C 07-3261 PJH, Docket 22 (N.D.Cal. 2008).  For another client, Singleton Law Group obtained a settlement in *Phillips v. Netblue, Inc.*, Case No. C-05-4401 SC, Dockets 199 and 201 (March, 2007).  Confidential settlements have also been obtained for other clients in California Superior Court primarily for cases involving *B&P Code* §17529.5.

In several of these cases significant issues of law have been discussed and decided by the district courts clarifying important legal issues in the *CAN SPAM Act of 2003* and *California Business and Professions Code* §17529.5.  See *Phillips v. Netblue, Inc.*, Not Reported in F.Supp.2d, 2007 WL 174459 (N.D.Cal. 2007) holding an IAS plaintiff is not responsible for preserving electronic evidence in the possession of the defendant and not in

the possession of plaintiff.  See *Phillips v. Netblue, Inc.*, Not Reported in F.Supp.2d, 2007 WL 528722 (N.D.Cal. 2007) order examining basis for expert opinion in a *CAN SPAM Act* case).  See *Phillips v. Netblue, Inc.*, Not Reported in F.Supp.2d, 2006 WL 3647116 (N.D.Cal. 2006) an order establishing statutory damages under the *CAN SPAM Act* as penalties.  See *Asis Internet Services v. Imarketing Consultants, Inc.*, Slip Copy, 2008 WL 2095498 (N.D.Cal. 2008) establishing the basis for personal jurisdiction for spammers located outside of the forum state.  See *Asis Internet Services v. Consumerbargaingiveaways, LLC*, 622 F.Supp.2d 935, 941–942 (N.D.Cal. 2009), holding that *California Business & Professions Code* §17529.5 is not preempted by the *CAN SPAM Act of 2003* if it does not require a showing of common law fraud including reliance and damages supported by a similar ruling; *Asis Internet Services v. Vistaprint USA, Inc.*, 617 F.Supp.2d 989 (N.D.Cal. 2009)(same); *Asis Internet Services v. Subscriberbase Inc.*, Slip Copy, 2009 WL 4723338 (N.D.Cal. 2009)(same).

These are only a few of the important legal areas that have been tested and brought to some conclusion by ASIS and the Singleton Law Group in the federal courts.  Many of these cases ran for two or more years where all the elements of the causes of action were discussed and reviewed by the court prior to settlement.  This is hardly the record of a litigation mill intent on quick settlements and unethical practices.   It is the record of a law firm representing clients in a narrow area of law.

In the one case that Defendant provided some details, it has completely misrepresented the matters in that case.  See Declaration of Jeffrey Rosenfeld Exhibit B.  The parties agreed at the hearing, and Plaintiff had previously requested that Defendant's re-file their motion to dismiss in order to get a ruling by the court and a dismissal as quickly as possible if that was appropriate.  As a result of an oral motion the judge dismissed the *CAN SPAM ACT of 2003* cause of action on that basis.  However, the court reserved pendant jurisdiction over the *B&P Code* §17529.5 violations and requested briefs from both parties concerning preemption. The *B&P Code* §17529.5 matter is still pending.

Further, the Court must consider the nature of the emails and the underlying

circumstances in this suit.  **FRCP** Rule 11(b).  This suit was brought by Plaintiff based on emails that were clear violations of the **CAN SPAM Act of 2003**.  The emails covered almost every violation possible under 15 **USC** §7704.  They contained false header information, they used stolen email accounts, they contained false subject lines, they did not contain either electronic or physical opt-out addresses, they were obviously created using automated scripts, a directory harvest was used to collect customer emails, and the senders employed botnets to send the emails.  These emails were among the most egregious possible under the definitions of the **CAN SPAM Act of 2003**.  These emails were exactly the same as those produced in the Northern District Case of **F.T.C. v. Optin Global, Inc.**, Not Reported in F.Supp.2d, 2005 WL 1027108 (N.D.Cal.2005) wherein the court issued a temporary, then permanent, injunction and seized all of the assets of the defendants.

In addition, the emails in this matter were involved in an FBI investigation, as to the actual senders, wherein Plaintiff's attorney provided its investigation files.

Plaintiff conducted exhaustive investigations into the actual sender and procurers of these emails, the evidence continually led to Azoogle as a procurer of the emails.

This case was decided on a narrow decision as to the type of harm that an Internet Access Provider must suffer in order to establish standing.  That decision says nothing about whether the emails and the Defendants in this matter were guilty of both civil and criminal violations as the senders of the emails.  The Court must consider in any decisions whether it is rewarding criminal and wrongful civil actions in making any awards in this matter.  As is evidenced by the contracts produced by Azoogle, the Defendant is not a poor bystander who was caught up in some scheme.  Azoogle was an active participant who played a key role in procuring the emails in a risky and possibly illegal business venture.

For those reasons the Court should deny Defendant's request for sanctions.

**B.**  **Defendant's attempt to relate ASIS to _Gordon_ is without merit. The _Gordon_ court found that the plaintiff was not an IAS and therefore could not have standing under the _CAN SPAM Act of 2003_.**

Defendant's attempt to somehow link Plaintiff ASIS with the court's decision in **Gordon v. Virtumundo, Inc.**, 575 F.3d 1040 (9th Cir. 2009) is without merit.  Simply because Plaintiff

and other IAS' presented an amicus brief describing their interest in the definition of an IAS, does not somehow implicate them in that case.  The **Gordon** court held that the plaintiff was not an IAS.  The **Gordon** plaintiff even admitted that his purpose was to trap spam and that was his only basis for funding his business (Gordon did not collect fees for his service from his customers, who were also his relatives) and makes "unusual efforts to seek out and accumulate-rather than avoid or block-spam." **Gordon v. Virtumundo, Inc.**, 575 F.3d 1040, 1056-1057 (9th Cir. 2009).

This in no way relates to ASIS, who has a thousand paying customers, and was in business as an IAS for eight years prior to passage of the **CAN SPAM Act of 2003**.  Further, there is no evidence that ASIS does not filter and block spam, and in fact uses two different filtering mechanism, Postini and its own internal email filtering servers.   Contrary to Defendant's assertions, ASIS does not turn off its spam filters.  The emails produced by ASIS in this matter contain the filtering information placed there by Postini during the filtering process and that information can easily be seen by examining the emails.   **Gordon** intentionally disconnected his spam filters.   **Gordon v. Virtumundo, Inc.**, 575 F.3d 1040, 1056-1057 (9th Cir. 2009).

The fact that ASIS then collects the information in a manner that can be presented in a court as evidence says nothing about its intent, only its competence in investigating and producing evidence.   Based on Defendant's argument, every IAS who has brought actions under the **CAN SPAM Act of 2003** is nothing but a litigation mill.  This includes Microsoft, Verizon, AOL, Earthlink, and a dozen others.  Microsoft alone has brought over a hundred **CAN SPAM Act of 2003** cases.   It also includes the FTC, who maintains a huge spam processing database, gathered with almost identical techniques as those used by ASIS, for the detection and production of evidence in spam suits.  Defendant would have the Court treat competence in investigating and producing evidence in spam suits as though it were proof of bad faith and improper motive.  This is ridiculous, and if this line of logic were followed every investigation, criminal or civil in any matter conducted by anyone would bring into question the motives of the investigator and prosecutor.

As the court stated in **Gordon**, being a "professional plaintiff" is not a dirty word, "and should not itself undermine one's ability to seek redress for injuries suffered." **Gordon v. Virtumundo, Inc.**, 575 F.3d 1040, 1057 (9th Cir. 2009).  The **Gordon** court cited **Murray v. GMAC Mortgage Corp.**, 434 F.3d 948, 954 (7th Cir. 2006) that stands for the principal that professional means "experience, if not expertise."  If ASIS is a "professional plaintiff", then all that can be implied is an expertise in collecting evidence and prosecuting lawsuits against professional spammers, because ASIS is a bona fide IAS with a thousand customers and years of experience in that business.

There has been no evidence produced by Defendant that ASIS is anything other than what it appears to be – a legitimate IAS and a "legitimate operations hampered by a deluge of unwanted e-mail marketing." **Gordon v. Virtumundo, Inc.**, 575 F.3d 1040, 1057 (9th Cir. 2009).

The fact that the court has chosen to create a very narrow definition of adverse affect does not vindicate the Defendant, nor does it prove that ASIS has an improper motive.

The Court should deny Defendant's motion on that basis.

**C.    Defendant has failed to provide any basis for sanctions under FRCP Rule 11 and there is no purpose in awarding sanctions under Rule 11.**

The underlying reason for a Rule 11 sanction is deterrence. **Christian v. Mattel, Inc.**, 286 F.3d 1118, 1127 (9th Cir. 2002).  There is no deterrence value in sanctions in this matter or any future **CAN SPAM Act of 2003** case brought by a plaintiff IAS, as no further cases are likely possible under the current rulings.

In addition, Defendant has failed to show either that the suit was frivolous, bad faith on the part of Plaintiff (as discussed above and in the original opposition), or that Plaintiff did not perform due diligence during the entire history of this case.  This Court itself noted the "resolutions of these issues was difficult, presenting close calls." **ASIS Internet Services v. Optin Global, Inc.**, Not Reported in F.Supp.2d, 2008 WL 1902217, *15 (N.D.Cal. 2008).  The Northern District Courts were in complete disagreement about the definition of terms and the evidence required to meet the requirements for standing.  See **ASIS Internet Services v.**

1   ***Active Response Group***, Not Reported in F.Supp.2d, 2008 WL 2952809 (N.D.Cal., 2008).

2   To now task the Plaintiff with the duty of having to know how the courts were going to interpret

3   the language of the statute and what evidence would then satisfy those definitions would

4   eliminate the reason for the court's existence.

5       This case is over, it has been decided by the appellate court on the basis of a lack of

6   harm and therefore a lack of standing.  There is no further deterrence possible in this case.

7   Further, as the definition prescribed by the ***Gordon*** court is now the standard for "adversely

8   affected", there is no way any plaintiff IAS can ever bring another case under the ***CAN SPAM***

9   ***Act of 2003***.  Therefore there can be no deterrent affect even for other plaintiffs.  Quite the

10  opposite, an award of attorney fees in this matter, which is being watched by the entire

11  industry (IAS', advertisers and spammers), would send a clear message that the courts are

12  siding with the spammers against the Internet Service Providers.

### CONCLUSION

14      Defendant has failed to provide any basis for sanctions under ***FRCP*** Rule 11.

15      The Court should deny the motion on that basis.

**SINGLETON LAW GROUP**

18  Dated:      February 12, 2010          /s/ Jason K. Singleton
                                          Jason K. Singleton,
19                                         Richard E. Grabowski, Attorneys for Plaintiff,
                                          **ASIS INTERNET SERVICES**