UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIS INTERNET SERVICES, | Case No. C-05-05124 JCS |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR SANCTIONS [Docket No. 471]** |
| v. | |
| OPTIN GLOBAL, INC., ET AL., | |
| Defendants. | |

## I. INTRODUCTION

Currently before the Court is Defendant Azoogle's renewed motion for sanctions against Plaintiff ASIS ("the Sanctions Motion"). In the Sanctions Motion, Azoogle seeks an award of the attorneys' fees and expert fees it incurred defending against Plaintiff's claims, all of which were dismissed with prejudice on summary judgment. This Court dismissed the Sanctions Motion without prejudice pending the Ninth Circuit's determination of Plaintiff's appeal of the summary judgment order. Now that the Ninth Circuit has affirmed the decisions of this Court with respect to both its March 27, 2008 summary judgment order ("the Summary Judgment Order"), as well as its order awarding Azoogle's costs ("the Cost Order"), the Court revisits the question of whether Azoogle should be awarded attorneys' fees and/or expert fees in this action. A hearing on the Sanctions Motion was held on April 30, 2010 at 9:30 a.m. For the reasons stated below, the Sanctions Motion is GRANTED.[1]  Azoogle is awarded $806,978.84 in fees.

---

[1] The parties have consented to the jurisdiction of the undersigned United States magistrate judge pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

Plaintiff ASIS is a California corporation and an Internet Access Service Provider. Second Amended Complaint ("SAC") at 2; *see also* Joint Statement of Stipulated Facts in Support of Motion for Summary Judgment ("Joint Statement"), No. 1 (stipulation that ASIS is a provider of Internet Access Service with the meaning of 15 U.S.C. § 7706(g)(1), 15 U.S.C. § 7702(11) and 47 U.S.C. § 231(e)(4)), No. 2 (stipulation that ASIS is an Electronic Mail Service Provider within the definition of California Business and Professions Code §§ 17529.5 and 17529.1(h)). ASIS was created in 1995 and in 2005 had just under 1,000 Internet access and e-mail customers. Declaration of Nella White in Support of Plaintiff's Motion for Summary Adjudication of Issues ("White Summary Judgment Motion Decl."), ¶¶ 2-3.

Azoogle is an Internet marketing company through which "lead vendors" and providers channel leads to sellers of goods and services. Declaration of David Graff in Support of AzoogleAds.com, Inc.'s Motion for Summary Judgment or in the Alternative Summary Adjudication ("Graff Summary Judgment Motion Decl."), ¶ 2.

Plaintiff sued over twenty defendants in this action, asserting that they were liable under the CAN-SPAM Act of 2003, 15 U.S.C. §§ 7701 *et seq.*, and California Business and Professions Code § 17529.5, for sending over 10,000 deceptive and unsolicited emails to ASIS's server during the period between October 25, 2005 and November 14, 2005. Second Amended Complaint at 7. Most of the Defendants settled with ASIS early in the litigation, but Azoogle did not.

On March 27, 2008, the Court issued an order granting summary judgment in favor of Azoogle and dismissing all of Plaintiff's claims against Azoogle with prejudice. The Court found, *inter alia*, that ASIS did not have standing to assert claims under the CAN-SPAM Act because it had not shown that it had suffered any "adverse effect" as a result of the emails in question. In reaching this conclusion, the Court relied, in part, on the reasoning set forth in *Gordon v. Virtumundo, Inc.*, 2007 WL 1459395 (W.D. Wash. May 15, 2007) with respect to the requirements for establishing

standing under the CAN-SPAM Act.[2] The Court further held that Plaintiff's claim under the CAN-SPAM Act failed because there was no evidence from which a jury could reasonably conclude that Azoogle "procured" the emails. For the same reason, the Court granted summary judgment as to Plaintiff's state law claim under Cal. Bus. & Prof. Code § 17529.5.

Azoogle subsequently filed a Bill of Costs as well as a motion for sanctions seeking an award of attorneys' fees and expert fees. On August 22, 2008, the Court denied the motion for sanctions without prejudice to renewing the motion within 30 days after the issuance of the mandate from the Ninth Circuit in connection with Plaintiff's appeal of the Summary Judgment Order. The Clerk awarded costs in the amount of $34,825.24 on September 3, 2008.

Plaintiff then filed a Motion to Stay Taxation of Costs and Plaintiff's Objections to Taxation of Costs, arguing that in light of the remedial purpose of the CAN-SPAM Act, Azoogle, as a prevailing *defendant*, should not be awarded any of its costs. In support of this assertion, Plaintiff cited the standard that is applied in civil rights cases, articulated in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), which treats prevailing plaintiffs more favorably than prevailing defendants in determining whether fees and costs should be awarded. Azoogle also argued that if any costs were awarded, taxation of those costs should be stayed until the appeal was decided. Finally, ASIS objected to certain specific items sought by Azoogle in its Bill of Costs.

In its Cost Order, the Court rejected Plaintiff's argument that the *Christiansburg* standard should be applied, finding instead that cost awards under the CAN-SPAM Act are governed by the even-handed approach set forth in *Fogarty v. Fantasy*, 510 U.S. 517 (1994), in which prevailing defendants are treated the same as prevailing plaintiffs. The Court declined to stay taxation of costs but reduced the award somewhat in response to Plaintiff's objections.

ASIS appealed both the Summary Judgment Order and the Cost Order. On December 2, 2009, the Ninth Circuit affirmed both orders in a Memorandum Disposition. With respect to the district court's entry of summary judgment, the Court of Appeals affirmed the dismissal of Plaintiff's CAN-SPAM Act claim for lack of standing, finding that ASIS had not been adversely

---

[2] At the time this Court issued its summary judgment order, an appeal to the Ninth Circuit of the district court's decision in *Gordon* was pending but had not yet been decided.

3

1  affected by the emails on which its claims were based. In support of its conclusion, the Ninth
2  Circuit cited to the approach set forth in *Gordon v. Virtumundo*, 575 F.3d 1049 (9th Cir. 2009), in
3  which the Ninth Circuit affirmed the district court decision upon which this Court relied in support
4  of summary judgment. Although the Ninth Circuit did not address whether Azoogle sent or
5  procured the emails for the purposes of the CAN-SPAM Act, it affirmed the district court's
6  dismissal of Plaintiff's claim under California Business and Professions Code Section 17529.5 on
7  the ground that "Defendant neither sent nor procured the emails at issue."

8      With respect to the cost award, the Ninth Circuit held that there was no abuse of discretion in
9  the award "[i]rrespective of whether the district court awarded costs under Federal Rule of Civil
10 Procedure 54(d)(1) or 15 U.S.C. § 7706(g)(4)." Although the parties briefed the question of whether
11 the *Christiansburg* or the *Fogarty* standard should be applied in determining whether costs should be
12 awarded under § 7706(g) of the CAN-SPAM Act, the Court of Appeals did not address that question
13 in its order. On January 11, 2020, the Ninth Circuit amended its mandate to include an award of
14 Azoogle's costs on appeal. On February 17, 2010, the Ninth Circuit denied Azoogle's request for
15 attorneys' fees on appeal.

16 **III. THE MOTION**

17     In the Sanctions Motion, Azoogle points to the Ninth Circuit's order affirming this Court's
18 summary judgment decision and cost award, arguing that it makes clear that an even-handed
19 approach applies under 15 U.S.C. § 7706(g)(4) "and that Azoogle is entitled to its attorneys' fees
20 under this provision." In particular, Azoogle argues that ASIS acted recklessly in initiating and
21 pursuing litigation in this action, with no evidence it suffered actual harm or that it violated the
22 CAN-SPAM Act. Azoogle also points to the fact that ASIS has initiated over 20 lawsuits under the
23 CAN-SPAM Act, none of which has resulted in a judgment on the merits in its favor, showing that
24 ASIS is merely seeking to profit from the CAN-SPAM Act rather than redress any actual harm that
25 it has suffered. In addition, in its original motion (which is incorporated by reference into the
26 renewed motion), Azoogle argued that it was entitled to fees under Rule 11 of the Federal Rules of
27 Civil Procedure and 28 U.S.C. § 1927.
28

4

Azoogle requests $912,413.84 in fees, that is, $806,978.84 in fees billed by appearing counsel Kronenberger Burgoyne, LLP (not including the fees incurred in connection with the appeal), *see* Declaration of Henry M. Burgoyne, III in Support of AzoogleLeads.com, Inc.'s Motion for Sanctions ("Burgoyne Decl."), ¶ 28 & Ex. M (time sheets), and $105,435.00 in fees for Azoogle's expert witness, Dr. Frederick Cohen. *See* Declaration of Stephen Fox in Support of AzoogleLeads.com, Inc.'s Motion for Sanctions ("Fox Decl."), ¶ 6 & Ex. E. In addition, Azoogle has submitted evidence that it incurred hundreds of thousands of dollars in additional fees from New York-based counsel retained to advise Azoogle in the litigation and manage discovery. *See* Fox Decl., ¶¶ 2-4 & Exs. A-C. Azoogle does not request those fees as part of the award, however.

In its Opposition to Azoogle's renewed motion, ASIS addresses only whether sanctions should be imposed under Rule 11, asserting that it is unclear from Azoogle's motion whether it is requesting attorneys' fees under the CAN-SPAM Act or Rule 11 and reasoning that the reference to "sanctions" in the title of the motion indicates that it is being brought under Rule 11. ASIS argues that sanctions are unwarranted under Rule 11 because although ASIS has brought a number of lawsuits under the CAN-SPAM Act, these lawsuits were based on "legitimate violations of either the CAN-SPAM Act of 2003 or the California Business and Professions Code § 17529.5." According to ASIS, the fact that it has brought numerous cases under the CAN-SPAM Act is not sufficient to show that ASIS has acted improperly. In fact, ASIS asserts, it has "obtained money judgments and injunctions" in two cases and confidential settlements in numerous other cases. Further, due to ASIS' litigation, courts have clarified important legal issues relating to the CAN-SPAM Act. Also, ASIS argues, the Court should consider the nature of the emails at issue in this case, which were "clear violations" of the CAN-SPAM Act, and that "Plaintiff conducted exhaustive investigations into the actual sender and procurers of the emails [and] the evidence continually led to Azoogle as a procurer of the emails." Although ASIS asserts generally in its Opposition that Azoogle's unreasonable litigation conduct drove up attorneys' fees, it does not identify any specific time entry that it asserts is unreasonable.

## IV. ANALYSIS

### A. Whether the Court Should Award Attorneys' Fees

Under the CAN-SPAM Act, in any action to enforce the Act by a provider of Internet Access Service, "the court may, in its discretion, require an undertaking for the payment of the costs of such action, and assess reasonable costs, including reasonable attorneys' fees, against any party." 15 U.S.C. § 7706(g)(4). In its Cost Order, the Court concluded that in determining whether to make an award under this provision, the even-handed approach articulated in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), which addressed a similar provision of the Copyright Act, should be applied. The Court relied on the reasoning of the Oregon district court in *Gordon v. Virtumundo, Inc.*, 2007 WL 2253296 (W.D. Wash. Aug. 1, 2007). Although the Court of Appeals affirmed the cost award without addressing which standard applies under the CAN-SPAM Act, this Court remains persuaded that the *Fogarty* standard should be applied for the reasons stated in its previous order. Further, under that standard, the Court concludes that an award of attorneys' fees to Azoogle is appropriate.

Under the *Fogerty* standard, there is "no precise formula" for determining when the court should exercise its discretion, but factors that may be considered include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 534 n. 19 (quoting *Lieb v. Topstone Industries, Inc*., 788 F.2d 151, 156 (1986)). Here, the Court concludes that while ASIS may not have acted out of bad faith in initiating litigation against Azoogle, it at least acted unreasonably. Even assuming ASIS might have reasonably believed when it initially named Azoogle as a defendant that it would be able to establish standing – a question that turned on an as-yet unresolved issue of law – there was never any evidence that Azoogle sent or procured the emails on which ASIS based its claims. Rather, it is apparent that ASIS sued Azoogle based on little more than speculation that there *might* be a connection between those emails and Azoogle. ASIS then continued to litigate even as its discovery efforts turned up no evidence in

support of its claims against Azoogle.[3] Having initiated over 20 similar actions, and sued over 20 defendants in this action alone, an award of attorneys' fees here is necessary to deter ASIS and other plaintiffs hoping to profit under the CAN-SPAM Act from casting such a wide net. The Court also concludes that an award of fees advances the interests of compensation to the extent that Defendant Azoogle was forced to defend itself against ASIS's groundless claims, resulting in years of litigation and over a million dollars in attorneys' fees. Accordingly, the Court awards Azoogle's attorneys' fees under 15 U.S.C. § 7706(g)(4).[4]

**B. Amount of Attorneys' Fees**

    **a. Legal Standard**

In this Circuit, the starting point for determining reasonable fees is the calculation of the "lodestar," which is obtained by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate. *See Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987)

---

[3] At oral argument, ASIS cited to the Court's statement in its summary judgment order that resolution of Azoogle's summary judgment motion "was difficult, presenting close calls." 2008 WL 1902217 * 15 (N.D.Cal. April 29, 2008 (redacted version)). According to Plaintiff, this statement indicates that the question of whether Defendant "procured" the emails was a "close call" and therefore, it is not appropriate to award fees on the basis that Plaintiff did not prevail in this respect. Plaintiff, however, takes the Court's statement out of context. In the same paragraph, the Court explained that these "close calls" arose in large part as a result of the scant case law addressing *legal* questions involving the relevant standards under the CAN-SPAM Act. For example, to resolve the question of whether Azoogle was entitled to summary judgment on the basis that there was no evidence of procurement, the Court was required to determine what the term "procure" means under the CAN-SPAM Act, which contains no definition of the term. As to that question, the Court looked to criminal law (there being no case directly on point under the CAN-SPAM Act) and ruled *in favor* of ASIS, rejecting Azoogle's argument that procurement under the CAN-SPAM Act required that the defendant have actual knowledge of a potential violation by a specific spammer. Even adopting the more lenient standard advocated by Plaintiff, however, the Court concluded that the evidence offered by ASIS to establish knowledge on Azoogle's part was "entirely speculative." *Id*. at * 19. Thus, while Defendant's summary judgment motion did, indeed, require the Court to make some close calls, including with respect to the legal standard that applies to procurement under the CAN-SPAM Act, the factual basis for Plaintiff's procurement claim was always extremely weak, regardless of how the term "procurement" is defined under the CAN-SPAM Act. In that respect, the Court's summary judgment ruling was *not* a close call.

[4] The fact that the Ninth Circuit did not award attorneys' fees for the appeal does not persuade the Court that it should reach a different result. As is clear from review of the appellate briefs, the primary issue on appeal was the threshold for establishing standing under the CAN-SPAM Act, a question that had not yet been resolved by the Ninth Circuit. This court, however, finds Plaintiff's conduct to have been unreasonable on a different ground, namely, the absence of any evidence of procurement, regardless of what standard applied to that term. As a result, the Ninth Circuit's failure to award attorneys' fees on appeal is not inconsistent with this Court's decision that Defendant is entitled to attorneys' fees for litigation at the trial court level.

7

(citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). In determining a reasonable number of hours, the Court must review detailed time records to determine whether the hours claimed by the applicant are adequately documented and whether any of the hours were unnecessary, duplicative or excessive. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *reh'g denied, amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987). To determine a reasonable rate for each attorney, the Court must look to the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Id.* at 1210-11.

"The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan,* 814 F.2d at 1263. "Affidavits of the plaintiff's attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff's attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Courts also may rely on decisions by other courts awarding similar rates for work in the same geographical area by attorneys with comparable levels of experience. *See, e.g., Nadarajah v. Holder*, 569 F.3d 906, 917 (9th Cir. 2009) (affirming award of attorneys' fees at rate of $500.00/hour where party had submitted a declaration describing her experience and attached copies of fee awards in the same geographical area where counsel had comparable experience).

In calculating the lodestar, the Court should consider any of the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), *cert. denied* 425 U.S. 951 (1976), that are relevant. *Jordan*, 815 F.2d at 1264 n.11 (noting that the Ninth Circuit no longer requires that the district court address every factor listed in Kerr). In *Kerr*, which was decided before the lodestar approach was adopted by the Supreme Court as the starting point for determining reasonable fees in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), the Ninth Circuit adopted the 12-factor test articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). This analysis looked to the following factors for determining reasonable fees: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skilled requisite to perform

8

the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

To the extent that the *Kerr* factors are not addressed in the calculation of the lodestar, they may be considered in determining whether the fee award should be adjusted upward or downward, once the lodestar has been calculated. *Chalmers*, 796 F.2d at 1212. However, there is a strong presumption that the lodestar figure represents a reasonable fee. *Jordan*, 815 F.2d at 1262. An upward adjustment of the lodestar is appropriate only in extraordinary cases, such as when an attorney faced exceptional risks of not prevailing or not recovering any fees. *Chalmers*, 796 F.2d at 1212. A reduced fee award is appropriate where a plaintiff achieves only partial or limited success. *Hensley*, 461 U.S. at 436. To be compensable, an attorney's time must be "reasonable in relation to the success achieved." *Id*. When accounting for limited success, a court may eliminate specific hours in calculating the lodestar, or it may simply reduce the award. *Id*.

### b.   **Reasonableness of Hourly Rates**

In support of the Sanctions Motions, Azoogle has provided a declaration describing the billing rates and qualifications of the attorneys at Kronenburger Burgoyne who worked on this case. These rates range from $180-220 for the more junior attorneys, $240-$280 for three temporary attorneys, and $350-425 for the most senior attorneys. *See* Burgoyne Decl., ¶¶ 18-26; Supplemental Declaration of Henry M. Burgoyne, III in Support of Azoogleads.com, Inc.'s Motion for Sanctions ("Burgoyne Supp. Decl."), ¶¶ 2-5. The Court has reviewed the rates and qualifications of the attorneys and legal assistants who worked on this case and, based on its familiarity with the prevailing rates in this district, finds those rates to be reasonable.

### c.   **Reasonableness of Time Billed**

Azoogle has provided detailed time sheets documenting the time billed defending against Plaintiff's claims. *See* Burgoyne Decl., Ex. M. Although the Sanctions Motion has been briefed

1  twice, ASIS has not objected to any specific time entry.[5] Further, the Court has reviewed the time
2  sheets provided by Azoogle and finds the time to be reasonable, especially in light of the fact that
3  Azoogle did not request any of the fees incurred by its New York counsel in this action, which
4  exceeded $500,000.00. *See* Fox Decl., Exs. A-C. Therefore, the Court concludes that Azoogle is
5  entitled to the full amount that it has requested in attorneys' fees, that is, $806,978.84.

### C. Expert Fees

Azoogle also asks the Court to award fees for its expert, Dr. Frederick Cohen, in the amount of $105,435.00. Although neither party addressed the issue, the Court finds that the CAN-SPAM Act does not provide for such an award and therefore denies Azoogle's request.

Expert fees are costs that would, ordinarily, be nontaxable to the extent they exceed the expert fees that are expressly allowed under 28 U.S.C. § 1821. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987) (holding that language of 28 U.S.C. § 1920 providing that court "may tax" certain costs listed in that provision did not allow the court to tax expert fees, which were not listed there, because Congress expressly limited witness fees in 28 U.S.C. § 1821). However, where a statute reveals a clear intent on the part of Congress to override this limitation, such costs may be awarded. *See Twentieth Century Fox Film Corp. v. Entertainment Distributing*, 429 F.3d 869, 885 (9th Cir. 2005) (holding that Section 505 of the Copyright Act, permitting courts to award "full costs" reflected Congress' intent to override the limitation in 18 U.S.C. § 1821). *But see*

---

[5] In its Opposition, ASIS asserts generally that Azoogle's attorneys' fees were, in part, caused by Azoogle's "outrageous litigation tactics." Opposition [Docket No. 476] at 2. In particular, according to ASIS:

> Defendant refused to produce witnesses in a timely manner that led to discovery motions by both parties, at one point setting up and canceling the deposition of Jen Evans five times. Defendant failed to produce its expert witness in a timely manner which excluded Plaintiff from ever taking the testimony of that witness, then complained about the fact that Plaintiff timely produced its witness and an extensive expert report. Defendant's attorneys used every procedural trick in the book to delay litigation and increase costs for everyone including their own clients. If they had firmly believed that Plaintiff lacked standing, then that motion could have been brought and resolved in either of the two initial motions to dismiss or any of the various motions that followed.

*Id*. The Court rejects these assertions. As Azoogle points out in its Reply brief, at the time the two motions to dismiss were filed, it had not yet been named as a defendant or served. Further, the Court does not find Azoogle's litigation tactics to have been "outrageous" or even unreasonable and declines to reduce Azoogle's attorneys' fees on the basis of Plaintiff's vague allegations.

*Pinkham v. Camex, Inc.,* 84 F.3d 292 (8th Cir.1996) (holding that the words "full costs" in Section 505 were not enough to show that Congress intended to override 18 U.S.C. § 1821). In *Gordon*, the district court declined to award expert fees under the CAN-SPAM Act, relying on the general rule that such fees are not recoverable under federal law. *See* 2007 WL 2253296 * 16 (W.D. Wash. Aug. 1, 2007). Similarly, this Court declines to award expert fees under the CAN-SPAM Act as it has found nothing in the statute or the case law indicating a clear intent on the part of Congress to override the general rule that expert fees are not available except as allowed under 28 U.S.C. § 1821.

## V. CONCLUSION

For the reasons stated above, Azoogle is awarded its attorneys' fees in the amount of $806,978.84.

IT IS SO ORDERED.

Dated: May 19, 2010

JOSEPH C. SPERO
United States Magistrate Judge